IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF FLORIDA

TALLAHASSEE DIVISION

BOBBY R. WILLIAMS,

    **Plaintiff,**

**vs.**                                      CASE NO. 4:23Cv2U7-AW/MAF

FLORIDA MEDICAL BOARD,

DR GEORGE E. PLATT, WERNER

ENTERPRISE INC.

    **Defendants.**

_____ /

## COMPLAINT

    Plaintiff, BOBBY R. WILLIAMS, pro se, sues Defendants FLORIDA MEDICAL BOARD and DR GEORGE E. PLATT hereinafter collectively referred to as "Defendants" and alleges:

### JURISDICTION AND VENUE

1. This is an action for monetary, injunctive and other equitable and statutory relief, brought pursuant to Chapter 766, Florida Statutes (2009).
2. This Court has jurisdiction pursuant to the provisions of Chapter 766, Florida Statutes.
3. The acts or practices alleged herein occurred in the conduct of "clinical laboratory examination" as defined in § 483.041, Florida Statutes.
4. The Plaintiff seeks relief in an amount greater than Ten Million Dollars ($10,000,000.00), exclusive of interest, costs and any legal fees incurred.
5. Venue is proper in this Court as the statutory violations herein occurred within Tallahassee.
6. All other conditions precedent to this action have occurred.
7. Plaintiff has conducted an investigation of the matters alleged herein.

### PARTIES


FILED USDC FLND TL
JUN 20 '23 PM2:27

1. Plaintiff, Bobby R. Williams, is a Claimant pursuant to § 766.202(1), Florida Statutes, and is authorized to seek penalties as well as monetary, equitable and injunctive relief.

2. Defendant, Florida Medical Board, is an organization which licenses, monitors, disciplines, educates and rehabilitates physicians and other practitioners to ensure their fitness and competence in the service of the people of Florida.

3. Defendant, Dr George E. Platt is a medical expert pursuant to § 766.202(6), Florida Statutes and runs a healthcare facility pursuant to § 766.202(4), Florida Statutes.

4. Defendant, Werner Enterprise Inc. is a transportation and logistics company located in California, within the jurisdiction of this court.

## FACTUAL BACKGROUND

1. The Plaintiff was hired by Werner Enterprises Inc. (herein "**Werner**") as a truck driver. He was given a pre-hire contract offer for employment while in Roadmaster Driving School. In order to be given a permanent position in the company he was required to undergo a driving evaluation and drug test.

2. Dr George E. Platt was contracted by Werner to perform the drug tests. The new employees were required to visit his clinic Omega and Quest Labs to undergo the drug test.

3. The Plaintiff complied with this requirement and visited Dr. Platt's clinic. He was required to take two drug hair follicle tests.

4. On the first day of his employment the Plaintiff was made to undergo another drug hair follicle test which Dr Platt certified as a requirement in the Medical Review Officer Guidance Manual (MRO). On 8/12/2020 the Plaintiff was called into the office at Werner by Bill Ramirez who advised that Dr. Platt wanted to speak to him. The conversation between the Plaintiff and Dr. Platt was via a telephone call.

5. When the Plaintiff got on the call the first thing Dr. Platt said was, "is this Roy Williams?" The Plaintiff responded that it was not and identified himself as Bobby Williams. Dr. Platt then went ahead to say, "okay, wrong person." Dr. Platt put him on hold and then called back to say he had the Plaintiff's drug test results. He said that the test was positive for meth, a revelation that shook the Plaintiff.

6. The Plaintiff was in shock and dumbfounded. He has never used any illicit substance in his entire life. He has been driving with a CDL licence for over 20 years and has never failed a drug test.

7. The Plaintiff went ahead to ask the doctor if the test could be redone as there was obviously an error. Dr. Platt denied his request and stated that the test results as received were final.

The Plaintiff tried to explain to Dr. Platt that the test results must be wrong as he has never used drugs in his life.

8.  Dr. Platt responded to the Plaintiff's requests by saying, "I am sorry because of that we have to terminate you." The Plaintiff was in the presence of Bill Ramirez and another person named Allan. He told them that the tests were wrong as he is not a drug user.

9.  The Plaintiff immediately set up a hair follicle drug test for the very next day with Concentra and American Mobile Drug Testing. Hair follicle tests can detect a drug for up to ninety (90) days. The Plaintiff received two negative drug test results here.

10. Thus, the Plaintiff had two positive drug tests and two negative drug tests. Dr. Platt only certified the two positive drug test results and disregarded the negative test results.

11. The Plaintiff later on discovered that there were two tests for the one-time collection that were sent out to two separate laboratories on 8/10/2020, that is, Omega and Quest Labs. Omega lab reported a positive test for meth while Quest lab reported a negative test. Upon conducting some research the Plaintiff found out that he has a right to an appeal of the positive drug test with an independent lab according to the department of transportation.

12. This being the case, when Dr. George discovered there were two conflicting results for the same sample there should have been a discussion about his right to appeal, the doctor should have inquired if he was taking any other type of medication or supplements or the doctor should have suggested a test to rule out a false positive.

13. The actions of Dr. Platt caused the Plaintiff to lose his job, his source of livelihood at the heart of the COVID-19 pandemic. This caused the Plaintiff mental harm and emotional pain. He also suffered great financial losses.

14. The Plaintiff proceeded to file a complaint with the Florida Medical Board (herein "the **board**") on 2/2/2022. The complaint was submitted before the Probable Cause Panel for the Board of Medicine. The board determined that the probable cause of a violation did not exist and they dismissed the complaint.

15. The Plaintiff was provided with an option of appeal within sixty (60) days of receipt of the order pursuant to section 456.073(9)(c), Florida Statutes. However, the Plaintiff is seeking the orders of this Court as the board is not sufficient in expediting the matter and giving orders in good time. This complaint was filed with them on 2/2/2022 and the Plaintiff received a response on 4/14/2023, more than a year later.

## A. Medical Negligence

1. The Plaintiff alleges that Dr. Platt is guilty of medical negligence pursuant to § 766.202(7), Florida Statutes which defines medical negligence as medical malpractice, whether grounded in tort or in contract.

2. Werner Enterprise Trucking issued the pre-drug screen test. Omega and Quest Labs were both hired by Werner for the complete pre-drug screening tests. The tests were evaluated and confirmed by medical review officer Dr. Platt M.D. who is a family physician in Green Cove Springs, Florida.

3. The Plaintiff completed five (5) total tests within a ninety (90) day window period due to being in truck driving school and as a pre-employment condition for Werner. From these five (5) tests, Werner was responsible for two (2) that were both collected on 8/10/2020 from one hair follicle sample sent to Omega and Quest Labs. Omega Labs returned a positive result and Quest returned a negative result. The Plaintiff was fired off the Omega result that was confirmed first.

4. The Plaintiff took two tests that were both processed by Omega Labs to ascertain the results.

5. The Plaintiff only discovered the outcome of the results issued to Werner after he subpoenaed the results from Werner. This was after he was falsely accused of being under the influence of drugs due to the positive drug test that was obtained. Werner terminated the employment of the Plaintiff and reported the positive drug test to the authorities which resulted in the tainting of the Plaintiff's record.

6. Werner received three different test results from Omega Labs within a ninety (90) day window period (8/10/2020 by Defendant, 8/14/2020 paid by Plaintiff and 8/21/2020 paid by Plaintiff) which contradicts what Omega cites on their website as their tests being collecting 1.5 inches of head hair for ninety (90) days of history. There were two (2) tests while in truck driving school that were negative on the front end of the ninety (90) day window period on 5/4/2020 and 6/22/2020 by Clinical Reference Laboratory (CRL) and both of these were evaluated Dr Platt as well.

7. Dr. Platt did not follow the Department of Health and Human Services Protocol 4.2 Donor Interview Informing of Laboratory Results and the Department of Transportation's Verification Process Rule 49 CFR part 40 Section 40.135 nor did he advise Plaintiff within 72 hours of informing about the positive test that he (Plaintiff) has the option of a split specimen test according to rule 4.4 Split Specimen with the Health and Human Services Department and the Department of Transportation (DOT) Rule 49 CFR Part 40 Section 40.171.

8. Dr. Platt informed Plaintiff of one laboratory result only. Rule 4.5 interpretation and verification of results per health and human services department and the department of transportation's verification process rule 49 CFR part 40 section 40.135 were neglected as Dr. Platt did not offer a fair and just interview or ask for supporting evidence or documentation to explain the positive result as according to the department of health and human services.

9. According to the rules of reasonableness, it would have been reasonable for Werner to order another round of tests to ascertain the position of the results already received. A third test result would have given an accurate position of whether the Plaintiff had used drugs or not. Relying on the positive test to incriminate the Plaintiff while overlooking the negative test was an act of unreasonableness by Werner. There is also no written mention in Werner's complaint and incident report about having the Plaintiff's conflicting drug test results or protocols for split specimen and follow-up interviews.

10. Werner acted in bad faith by disregarding the negative test results and accusing the Plaintiff of using illegal drugs. Reporting the Plaintiff and having his record tainted was an act of bad faith.

11. The Plaintiff paid to have two fresh tests taken on 8/14/2020 and 8/21/2020 both ran by Omega Labs that were both negative and this contradicts what Omega cites on their website as they state the standard is collecting 1.5 inches of head hair for ninety (90) days of history. Plaintiff had two (2) tests that were negative on the front end of the ninety (90) day window and two (2) tests that were negative on the back end of the ninety (90) day window period.

12. Under the State Personnel Board (SPB) Rules Section 213.6, an applicant that has been disqualified due to failing a drug test may appeal the disqualification on the grounds that there was a violation of test protocol or chain of custody procedures or other irregularity that invalidates the test. A disqualified applicant may have his/her drug test specimen retested at his/her own expense as provided in Section 213.4(i)(2) and include the results of the retesting in his/her appeal.

13. Plaintiff did undergo retesting of which the results were negative. Under this law, an applicant that prevails upon appeal under Section 213.4 will be restored to eligibility in the examination from which disqualified or restored to the eligible list from which withheld. Thus, if an appeal by the Applicant succeeds, the Employer is mandated to take in the subsequent test results and restore the eligibility of the Applicant.

14. The Doctor hired by Werner to conduct the drug tests did not follow protocol while handling the test results as averred in the preceding paragraphs. This is evidence of delict

of duty and medical negligence. The Doctor owed a duty of care to Plaintiff to ensure that the tests were conducted with the highest accuracy and the results were error-free.

15. The actions of Dr. Platt caused the Plaintiff to suffer economic damages which is defined as financial losses that would not have occurred but for the injury giving rise to the cause of action, including, but not limited to, past and future medical expenses and 80 percent of wage loss and loss of earning capacity to the extent the claimant is entitled to recover such damages under general law pursuant to § 766.202(3), Florida Statutes.

## B. Appeal to the Decision of the Florida Medical Board

1. The Plaintiff filed a complaint with the Florida Medical Board on 2/2/2022 against Dr. Platt. A copy of the complaint has been attached heretofore as **Exhibit A.**

2. A response to the complaint was received by the Plaintiff from the board on 4/14/2023, more than a year after the complaint was filed.

3. The Plaintiff has been given an option of appealing this decision of the board.

4. However, due to the delays from the board it will be to the Plaintiff's disadvantage if he is made to wait for the decision of the board regarding the conduct of Dr. Platt. The Plaintiff is bound to suffer irreparable harm if this suit is not instituted, heard and determined in his favor. He also risks having the suit filed out of time as the statute of limitations for filing a case of medical negligence is two years.

5. The Plaintiff is within time if the Court can overlook the time wasted by the board in making a determination on the complaint filed.

## C. Damages Suffered by the Plaintiff

1. As a consequence of the Plaintiff's dismissal he suffered great damages.

2. Werner's actions to report the Plaintiff to the authorities and falsely accuse him of drug use amounts to defamation. California Civil Code 45 to 47 defines defamation as either slander or libel. Slander is verbal defamation while libel is written defamation. Libel under this law is defined as 'false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation'.

3. The Plaintiff suffered harm from the false accusation made to the authorities. This caused him emotional hurt and suffering as he struggled to find another job.

4. The time of these actions was in 2020. A time when the global economy had taken a hit from the pandemic. Werner terminated the employment of the Plaintiff during this difficult economic time. As a result, the Plaintiff suffered as he tried to secure alternative

employment and provide for himself and his dependents. It was also hard for the Plaintiff to secure a job as his record had been ruined due to the false allegations levelled against him by Werner to the authorities.

5. The Plaintiff instituted a wrongful termination suit at the Small Claims Court of California where he alleged false accusation of drug use by Werner to the Plaintiff and a delict of duty by Werner and the Doctor on record for falsely accusing Plaintiff of drug use.

6. Werner sent a representative of the company from their Fontana location to represent the company in the suit. The name of the representative is Benton Lloyd, the Werner Enterprise Terminal Manager.

7. The representative appeared before the Small Claims Court on 12/23/2021. He perjured himself to the Court while under oath that the split sample was positive. At the time he made this statement to the Court he was fully aware that the split sample test result was negative.

8. The representative lied to the Court while under oath amounting to perjury. His lie to the Court caused the case to be ruled in favor of Werner further aggrieving the Plaintiff and taking justice away from him.

### D. Violation of MRO Protocol

1. The blatant violation of the MRO protocol by Dr. Platt M.D. is a grave concern that cannot be overlooked. According to the MRO manual, it is clearly outlined that when a positive drug test result is obtained, the MRO must follow specific procedures. The violations committed by Dr. Platt directly contradict these established guidelines, thereby raising serious questions about the integrity of the testing process and the reliability of the results.

2. According to the MRO manual, Rule 4.4 explicitly states that the MRO must inform the donor of the opportunity to request testing of the split specimen (Bottle B) when the primary specimen (Bottle A) is reported as positive, adulterated, or substituted to the federal agency. It further emphasizes that the donor has 72 hours from the time of notification of the non-negative result to request the split specimen test. The MRO is required to document the donor's verbal request in the MRO records.

3. In violation of Rule 4.4, Dr. Platt failed to inform me within the specified 72-hour window about the positive test result and my right to request a split specimen test. This failure not only infringes upon my rights but also undermines the integrity of the testing process.

4. Moreover, the MRO manual provides clear instructions on the necessary steps for requesting the split specimen test. The manual states that the MRO must request testing of the split specimen (Bottle B) in writing, using a memorandum or letter format. The written

request should include essential information such as the MRO's name and address (on MRO letterhead), the laboratory name and address where the primary specimen analysis was performed, the specimen ID number on the Federal CCF, the laboratory accession number, and the name and address of the HHS-certified laboratory selected to test the split specimen (Bottle B).

5. Dr. Platt's failure to follow the proper procedure for requesting the split specimen test, as outlined in the MRO manual, demonstrates a disregard for established guidelines. This negligence further undermines the fairness and accuracy of the testing process.

6. Additionally, the MRO manual highlights the importance of confidentiality in reporting split specimen test results. It states that the split testing laboratory must report the results to the MRO using a copy of Copy 1 of the Federal CCF, ensuring confidentiality and prohibiting the verbal reporting of results by telephone. This measure is in place to maintain the integrity of the results and prevent any compromise of sensitive information.

7. Dr. Platt's failure to ensure the proper handling and confidentiality of the split specimen test results is a serious breach of protocol. This violation raises concerns about the accuracy and reliability of the reported results and casts doubt on the entire testing process.

8. The violations committed by Dr. George Edward Platt M.D. against the MRO protocol, as clearly outlined in the MRO manual, are undeniable. These violations include the failure to inform the donor within the required timeframe, neglecting the proper procedure for requesting the split specimen test, and disregarding the confidentiality requirements for reporting test results. These breaches of protocol significantly compromise the integrity, fairness, and accuracy of the testing process, warranting a thorough investigation and appropriate actions to address the violations.

### E. Prayers Sought

WHEREFORE, the Plaintiff prays that the Court enter judgement against Werner Enterprise Trucking and further grant the following reliefs:

1. This Court to quash the decision of the Florida Medical Board dismissing his complaint dated 2/2/2022.

2. This Court revoke the license of Dr. Platt for medical negligence.

3. This Court order all three defendants to compensate the Plaintiff in damages the harm suffered due to their incompetence to the tune of Ten Million Dollars ($10,000,000.00) exclusive of interest at the Court rates.

4. Any other order as the Court sees just and fair.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was mailed/hand delivered to:

1. The Florida Medical Board

2. Dr. George E. Platt

3. Werner Enterprise Inc.

On this _____5_____ day of _____June_____ 2023.

Respectfully submitted,

/s/ _Bobby R. Williams_

BOBBY R. WILLIAMS

Pro se

Mail body: BOBBY SUMMONS.pdf

<div align="center">CIVIL CASE COVER SHEET</div>

**I.  CASE STYLE**

<div align="center">SUPREME COURT OF FLORIDA</div>

BOBBY R. WILLIAMS,

    Plaintiff,

v.                                           Case No.

FLORIDA MEDICAL BOARD,

GEORGE E. PLATT & WERNER

ENTERPRISE INC.

    Defendant.

**II.  AMOUNT OF CLAIM**

("Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

_____$8,000 or less

_____$8,001 - $30,000

_____$30,001 - $50,000

_____$50,001 - $75,000

_____$75,001 - $100,000

___✓___over $100,000.00")

**III.  TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

_____ Condominium

_____ Contracts and indebtedness

_____ Eminent domain

_____ Auto negligence

__✓___ Negligence-other

_____ Business governance

_____ Business torts

_____ Environmental/Toxic tort

_____ Third party indemnification

_____ Construction defect

_____ Mass tort

_____ Negligent security

_____ Nursing home negligence

_____ Premises liability-commercial

_____ Premises liability-residential

_____ Products liability

_____ Real property/Mortgage foreclosure

_____ Commercial foreclosure

_____ Homestead residential foreclosure

_____ Non-homestead residential foreclosure

_____ Other real property actions

__✓___ Professional malpractice

_____ Malpractice-business

__✓___ Malpractice-medical

_____ Malpractice-other professional

_____ Other

_____ Antitrust/Trade regulation

_____ Business transactions

_____ Constitutional challenge-statute or ordinance

_____ Constitutional challenge-proposed amendment

_____ Corporate trusts

_____ Discrimination-employment or other

_____ Insurance claims

_____ Intellectual property

_____ Libel/Slander

_____ Shareholder derivative action

_____ Securities litigation

_____ Trade secrets

_____ Trust litigation

COUNTY CIVIL

__✓__ Civil

_____ Real Property/Mortgage foreclosure

_____ Replevins

_____ Evictions

_____ Residential Evictions

_____ Non-residential Evictions

_____ Other civil (non-monetary)

**IV.    REMEDIES SOUGHT (check all that apply):**

__✓__ Monetary;

__✓__ Nonmonetary declaratory or injunctive relief;

_____Punitive

V.    NUMBER OF CAUSES OF ACTION:[ ]

(Specify) Injunctive orders stopping the execution of the orders granted by the Florida Medical Board

Orders finding Dr. George E. Platt liable for medical negligence and malpractice

VI.    IS THIS CASE A CLASS ACTION LAWSUIT?

_____yes

____✓____no

VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?

_____no

__✓__ CIV SB 2301494 yes If "yes," list all related cases by name, case number, and court.

VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?

_____yes

____✓____no

IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?

_____yes

____✓____no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of General Practice and Judicial Administration 2.425.

Signature _____

Name Bobby R. Williams

Signature _____    6-5-23

Mail body: BOBBY SUMMONS.pdf

# IN THE

# SUPREME COURT OF FLORIDA

BOBBY R. WILLIAMS,

     Petitioner,

v.                                    Case No.

FLORIDA MEDICAL BOARD,

     Respondent.

**INITIAL BRIEF OF PETITIONERS**

BOBBY R. WILLIAMS, Pro se

P.O. Box 2928 Johannan Lane
North Las Vegas, NV 89032
+1 (682) 667-3179
Bwil21615@gmail.com

1

# A. TABLE OF CONTENTS

B. TABLE OF CITATIONS........................................................................................3

C. STATEMENT OF THE CASE AND STATEMENT OF THE FACTS ...............................4

D. SUMMARY OF ARGUMENT ...............................................................................6

E. ARGUMENTS ....................................................................................................9

   1.   Standard of Review............................................................................9

   2.   Argument ............................................................................................9

      a.   Right to be Heard ........................................................................9

      b.   Right to Tender Evidence on Behalf of One's Case ...................10

      c.   Medical Malpractice and Negligence.........................................11

F. CONCLUSION...................................................................................................13

# B. TABLE OF CITATIONS

## Cases

Chiles v. Phelps, 308 So. 2d 52 (Fla. 1975)..........................................................7

Crouch v. Crouch, 759 So. 2d 2 (Fla. 2000 .........................................................6

D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 (Fla. 2003) ................................8

Doe v. Doe, 789 So. 2d 327 (Fla. 2001) ...............................................................9

Gooding v. University Hospital Building, Inc., 445 So. 2d 1015 (Fla. 1984)..........11

Graham v. State, 124 So. 3d 211 (Fla. 2013).......................................................8

Gray v. Roberts, 82 So. 2d 539 (Fla. 1955) .........................................................7

Hernandez v. State, 171 So. 3d 1169 (Fla. 2015..................................................6

Jefferson v. Aslinger, 373 So. 2d 444 (Fla. 1979) ...............................................7

Johnson v. State, 340 So. 2d 789 (Fla. 1976) .......................................................9

Saunders v. Dickens, 170 So. 3d 413 (Fla. 2015)................................................11

Shevin v. Weinstein, 226 So. 2d 740 (Fla. 1969) .................................................7

Verro v. State, 802 So. 2d 346 (Fla. 2001) ...........................................................8

## Statutes

Article V, Section 4(b) of the Florida Constitution ..............................................6

Fifth Amendment of Constitution of the United States .........................................5

Fifth Amendment of the United States Constitution..............................................8

Fla. R. P. 9.190......................................................................................................5

Florida Constitution, in Article I, Section 9..........................................................9

Florida Evidence Code (Chapter 90, Florida Statutes) .........................................9

Florida Statutes Section 86.011 ............................................................................6

Florida Statutes under Section 86.021 ..................................................................7

section 456.073(9)(c) of the Florida Statutes........................................................5

Section 456.073(9)(c) of the Florida Statutes .......................................................8

Section 86.031........................................................................................................7

# C. STATEMENT OF THE CASE AND STATEMENT OF THE FACTS

The Petitioner seeks review of the Florida Medical Board's (the **board**) decision to dismiss his complaint against Dr. George E. Platt (herein **Dr.** Platt) for medical malpractice and seeks orders of certiorari and mandamus. The complaint was filed with the Board on 2 February 2022 as an original action against Dr. Platt. The writs sought in this case invoke the original jurisdiction of this Court pursuant to Fla. R. App. P. 9.190. The Petitioner requests the Court to issue writs of certiorari and mandamus directing the Board to find the Dr. Platt liable for medical malpractice and to quash the decision of the Board to dismiss the Petitioner's complaint. The Petitioner has filed separate suits against Dr. Platt, the Board and his former employer (Werner Enterprise Inc.).

The Petitioner has filed this petition timely. The Petitioner filed a complaint with the Board on 2 February 2022. (A copy of the complaint has been annexed hereto as **Annexure A**). The Board gave a determination based on the complaint on 14 April 2023. This is more than a year after he had filed the complaint. This puts the Petitioner in a prejudiced position where he may be unable to bring a proper case before a Court due to the Statute of Limitations. One has two years to bring an action against a medical practitioner for medical malpractice pursuant to Fla. R. P. 95.11(4)(b).

The Petitioner, who was hired by Werner Enterprises Inc., underwent a driving evaluation and drug test as part of the employment requirements after receiving a pre-hire contract offer while attending Roadmaster Driving School. Werner contracted Dr. George E. Platt to conduct the drug tests, which were to be performed at his clinic, identified as Omega and Quest Labs. The Petitioner complied with the requirement and visited Dr. Platt's clinic, where he underwent two drug hair follicle tests.

On the Petitioner's first day of employment, he was asked to undergo another drug hair follicle test, which Dr. Platt certified as a requirement per the Medical Review Officer (MRO). On August 12, 2020, the Petitioner was called into the office at Werner by Bill Ramirez, who informed him that Dr. Platt wanted to speak with him. The Petitioner had a telephone conversation with Dr. Platt.

Upon getting on the call, Dr. Platt immediately asked if the Petitioner was Roy Williams. The Petitioner clarified that he was Bobby Williams. Dr. Platt then stated, "okay,

4

wrong person," and kept the Petitioner on hold. He came back to the call to provide the Petitioner with his drug test results, which revealed a positive result for methamphetamine, shocking the Petitioner.

The Petitioner, who had never used illicit substances in his life and had a clean record of over 20 years as a CDL-licensed driver, was completely taken aback and disbelieving. The Petitioner requested that the test be redone, as he believed there must have been an error. However, Dr. Platt denied the request, asserting that the test results received were final. The Petitioner tried to explain that the results must be incorrect, as he had never used drugs. In response to the Petitioner's requests, Dr. Platt stated, "I am sorry because of that we have to terminate you." The Petitioner made it clear to Bill Ramirez and another individual named Allan, who were present during the conversation, that the test results were wrong as he was not a drug user.

The Petitioner immediately scheduled a hair follicle drug test for the following day with Concentra and American Mobile Drug Testing, both of which yielded negative results. Hair follicle tests can detect drug use up to 90 days prior. Consequently, the Petitioner had two positive drug test results from Dr. Platt and two negative drug test results from Concentra and American Mobile Drug Testing. However, Dr. Platt only certified the positive results and disregarded the negative results.

The Petitioner later discovered that there were two tests conducted on the same sample, sent to separate laboratories, namely Omega and Quest Labs, on August 10, 2020. Omega Lab reported a positive result for methamphetamine, while Quest Lab reported a negative result. Through research, the Petitioner learned of his right to appeal a positive drug test with an independent lab according to the Department of Transportation.

In light of the conflicting results for the same sample, Dr. George should have discussed the Petitioner's right to appeal, inquired about any other medications or supplements he may have been taking, or suggested additional testing to rule out a false positive. Dr. Platt's actions caused the Petitioner to lose his job, which served as his primary source of livelihood during the COVID-19 pandemic. This resulted in mental anguish, emotional distress, and significant financial losses for the Petitioner.

Subsequently, the Petitioner filed a complaint with the Florida Medical Board on February 2, 2022. The complaint was presented to the Probable Cause Panel for the Board of

Medicine, which ultimately determined that there was no probable cause for a violation and dismissed the complaint.

While the Petitioner was offered the option to appeal within 60 days of receiving the board's order, as outlined in section 456.073(9)(c) of the Florida Statutes, he seeks the intervention of the court because the board's process has proven insufficient in expediting the matter and issuing timely orders. The Petitioner filed the complaint with the board on February 2, 2022, and received a response on April 14, 2023, more than a year later.

## D. SUMMARY OF ARGUMENT

The purpose of judicial review is to allow the Court to review the decision of a judicial or a quasi-judicial body. It is a tool by the Court to provide checks and balances over the decision of a body assuming the role of the judiciary. The Board has a tribunal that receives complaints. The tribunal deliberates on the complaint and gives a determination based on the facts of the case, the evidence adduced and the law. Thus, the tribunal performs a judicial function which is capable of review by this Court pursuant to Fla. R. P. 9.190.

Courts performing a judicial review are tasked with the burden of ensuring that the rights of the parties are preserved and the perpetrators of infringing the rights are punished for the same. It is clear that the Petitioner's rights were infringed by the Board and all other parties involved. For purposes of this Petition we will focus on the Board. The Board made a decision on the complaint filed by the Petitioner without affording him a right to be heard. The right to be heard is a fundamental human right in the United States of America and the State of Florida.

The United States Constitution, through its Fifth and Sixth Amendments, and the Florida Constitution, specifically Article I, Sections 9 and 16, provide robust protections for the right to be heard. The Fifth Amendment's Due Process Clause ensures that individuals have a fair opportunity to present their case and be heard before any deprivation of life, liberty, or property occurs. Similarly, the Sixth Amendment guarantees a fair trial and includes rights such as confronting witnesses, obtaining witnesses in one's favor, and the assistance of counsel. In the Florida Constitution, Article I, Section 9, reinforces the right to due process, emphasizing that no person should be deprived of their rights without proper legal proceedings. Furthermore, Article I, Section 16, underscores the right to a speedy and public trial, explicitly stating that courts must be open to every person for redress of any injury, without sale, denial, or delay.

6

Together, these constitutional provisions affirm the right to be heard and emphasize the fundamental importance of a fair and just legal process.

The right to be heard in this case would have allowed the Petitioner to give his evidence in the case. Dr. Platt would also be called to his defence to counter the evidence adduced by the Petitioner. The Board would then make a determination based on the evidence tendered before it and the law. However, in this case, the Board made a decision *suo moto* to dismiss the Petitioner's complaint without reviewing any evidence in the case and the laws that apply. (A copy of the decision of the Board have been annexed hereto as **Annexure B**).

The Petitioner seeks a writ of certiorari to quash the decision of the Board to dismiss his complaint and not to hold Dr. Platt liable for medical malpractice and negligence. The Petitioner also seeks a writ of mandamus to compel the Board to find Dr. Platt liable for medical malpractice and negligence which led the Petitioner to lose his job and his source of livelihood.

Pursuant to Article V, Section 4(b) of the Florida Constitution the Florida Supreme Court has been granted the power to issue writs of certiorari. It states that the Supreme Court "may issue writs of prohibition, mandamus, quo warranto, certiorari, and habeas corpus and all other writs necessary to the complete exercise of its jurisdiction."

Florida Statutes Section 86.011 gives the general authority of Florida courts to issue writs of certiorari. It states that the circuit court and district courts of appeal have the power to issue writs of certiorari "to review the proceedings of inferior courts, tribunals, officers, or boards exercising judicial or quasi-judicial functions."

The Supreme Court of Florida in Hernandez v. State, 171 So. 3d 1169 (Fla. 2015 reaffirmed the principles governing the issuance of writs of certiorari in Florida. The court held that the writ of certiorari is an extraordinary remedy that is available only when there is a departure from the essential requirements of the law, resulting in a miscarriage of justice. The court emphasized that the writ should be used sparingly and is not a substitute for a regular appeal.

In Crouch v. Crouch, 759 So. 2d 2 (Fla. 2000 the Florida Supreme Court clarified that a writ of certiorari is appropriate when there is a violation of a clear legal right and a lack of an adequate remedy by appeal. The court explained that the writ may be granted to correct errors that are not capable of being remedied on appeal, such as a departure from the essential requirements of law resulting in irreparable harm.

7

Further, in Chiles v. Phelps, 308 So. 2d 52 (Fla. 1975) the Court established that the writ of certiorari is not a substitute for an ordinary appeal and should only be used in exceptional circumstances. The court emphasized that the writ should be reserved for cases where there is a manifest and urgent necessity for its issuance to prevent a miscarriage of justice.

Florida Statutes under Section 86.021 outlines the general authority of Florida courts to issue writs of mandamus. It states that the circuit court and district courts of appeal have the power to issue writs of mandamus "to compel the performance of any act that the law requires."

Section 86.031 specifies the circumstances in which the writ of mandamus may be issued against public officers or boards. It states that mandamus is appropriate when the officer or board has a "clear legal duty" to perform an act and the petitioner has a "clear legal right" to the performance of that act. Further, Section 86.04 provides the procedural requirements for filing a petition for a writ of mandamus. It specifies the contents of the petition, the service of process, and the time limits for filing and responding to the petition.

In Gray v. Roberts, 82 So. 2d 539 (Fla. 1955) the Florida Supreme Court held that the writ of mandamus is an extraordinary remedy that may be used to compel public officials to perform their duties when they have a clear legal duty to do so. The court emphasized that mandamus is appropriate when there is a ministerial duty that is clearly defined by law and the petitioner has a clear legal right to its performance.

The Florida Supreme Court also in State ex rel. Shevin v. Weinstein, 226 So. 2d 740 (Fla. 1969) clarified that the writ of mandamus can be utilized to compel government officials to perform acts that are required by law. The court stressed that the duty to be enforced through mandamus must be specific and ministerial in nature, and the petitioner must establish a clear legal right to the performance of that duty.

In Jefferson v. Aslinger, 373 So. 2d 444 (Fla. 1979) the Florida Supreme Court reaffirmed that the writ of mandamus is a discretionary remedy and should only be granted in exceptional circumstances. The court emphasized that mandamus is not available to direct discretionary acts or control the exercise of judgment by public officials, but rather to enforce clear legal duties.

8

# E. ARGUMENTS

**A tribunal's order on a petition for a writ of certiorari is reviewable by direct appeal.**

### 1. Standard of Review

The Petitioners submit that the issue presented in this case is a pure question of law subject to the de novo standard of review. See D'Angelo v. Fitzmaurice, 863 So. 2d 311, 314 (Fla. 2003) (stating that standard of review for pure questions of law is de novo).

### 2. Argument

The Petitioner sought relief from the Florida Medical Board against Dr. Platt seeking orders to find his actions amounting to negligence and medical malpractice. The Board, issued a decision more than a year later dismissing the complaint of the Petitioner. The Board offered the Petitioner an avenue of appeal within sixty (60) days of receipt of the decision. However, due to the conduct of the Board in issuing a decision more than a year later the Petitioner finds it proper to seek review and relief from this Court.

### a. Right to be Heard

The petitioner in this case was unjustly denied the right to be heard by the medical board, thereby violating their fundamental due process rights. The right to be heard is a cornerstone of our legal system, ensuring fairness and the opportunity to present one's case before a decision is made.

The Fifth Amendment of the United States Constitution guarantees the right to due process, which includes the right to be heard. This principle is echoed in the Florida Constitution, specifically in Article I, Section 9, which affirms that no person shall be deprived of life, liberty, or property without due process of law.

Section 456.073(9)(c) of the Florida Statutes provides the petitioner with an option to appeal within sixty (60) days of receipt of the order issued by the medical board. This provision demonstrates the recognition of the right to be heard and the opportunity for recourse in cases where a party feels aggrieved by the board's decision.

Florida case law supports the petitioner's argument that the right to be heard is of paramount importance. In cases such as Graham v. State, 124 So. 3d 211 (Fla. 2013), and Verro v. State, 802 So. 2d 346 (Fla. 2001), the courts have emphasized the significance of affording individuals an opportunity to be heard in administrative proceedings. Denying the petitioner

the right to be heard not only contravenes constitutional and statutory provisions but also runs counter to established legal precedents.

In this case, the petitioner filed a complaint with the Florida Medical Board, seeking redress for the unjust treatment they endured. However, the board dismissed the complaint without affording the petitioner the opportunity to present their case and provide evidence in support of their claims. This denial of the right to be heard is a clear violation of the petitioner's due process rights.

The petitioner's right to be heard is essential to ensure a fair and just resolution of the matter at hand. Denying this fundamental right undermines the principles of fairness, justice, and the rule of law. Therefore, it is imperative that the court rectifies this injustice by granting the petitioner the opportunity to be heard before the medical board, thereby upholding their constitutional and statutory rights to due process.

### b. Right to Tender Evidence on Behalf of One's Case

The petitioner in this case was unjustly denied the right to tender evidence in support of their case, which constitutes a violation of their fundamental due process rights. The right to present evidence is a crucial aspect of a fair and impartial legal process, ensuring that parties have the opportunity to substantiate their claims and defend their interests.

The Fifth Amendment of the United States Constitution guarantees the right to due process, which encompasses the right to present evidence. Similarly, the Florida Constitution, in Article I, Section 9, affirms that no person shall be deprived of life, liberty, or property without due process of law. This includes the right to present evidence in support of one's case before a decision is reached.

Under Florida law, the rules of evidence, including the Florida Evidence Code (Chapter 90, Florida Statutes), provide a framework for the admission and presentation of evidence in legal proceedings. These statutes recognize the importance of allowing parties to tender evidence relevant to their case and have it considered by the appropriate decision-making body.

Florida courts have consistently emphasized the significance of the right to tender evidence. In cases such as Doe v. Doe, 789 So. 2d 327 (Fla. 2001), and Johnson v. State, 340 So. 2d 789 (Fla. 1976), the courts have reiterated that parties must be afforded the opportunity to present evidence to support their claims and defenses. Denying the petitioner the right to

tender evidence not only contravenes constitutional and statutory provisions but also runs counter to established legal precedents.

In this case, the petitioner sought to tender evidence in support of their case before the relevant decision-making body. However, their attempts to present this evidence were unjustly thwarted, depriving them of a fair opportunity to substantiate their claims. This denial of the right to tender evidence is a clear violation of the petitioner's due process rights.

The right to tender evidence is vital to ensure a fair and impartial resolution of legal disputes. Denying this fundamental right undermines the principles of fairness, justice, and the rule of law. Therefore, it is imperative that the court rectifies this injustice by granting the petitioner the right to tender evidence in support of their case, thereby upholding their constitutional and statutory rights to due process.

### c. Medical Malpractice and Negligence

In the present case, the Petitioner alleges that Dr. Platt is guilty of medical negligence and malpractice, as defined under § 766.202(7) of the Florida Statutes. The Petitioner underwent multiple drug tests, which were conducted by Omega and Quest Labs under the supervision of Dr. Platt. However, the results of these tests were contradictory, with Omega Labs reporting a positive result and Quest Labs reporting a negative result. It was based solely on the positive test result that the Petitioner was falsely accused of drug use, leading to his termination and the tarnishing of his record.

Furthermore, it is evident that Dr. Platt failed to follow proper protocols outlined by the Department of Health and Human Services and the Department of Transportation, including the obligation to inform the Petitioner of his right to a split specimen test and the requirement to provide a fair and just interview. By neglecting these protocols, Dr. Platt denied the Petitioner the opportunity to tender evidence and present a comprehensive defense.

Werner, the employer, acted unreasonably by relying solely on the positive test result while disregarding the negative results. Their failure to order additional tests to ascertain the accuracy of the conflicting results demonstrates their lack of diligence and reasonableness in handling the situation. Moreover, Werner's decision to report the positive drug test to the authorities without considering the negative test results indicates bad faith on their part.

According to the State Personnel Board Rules, the Petitioner has the right to appeal a disqualification based on a failed drug test if there were violations of test protocol or

11

irregularities that invalidate the test. The Petitioner exercised this right and underwent retesting, which yielded negative results. Consequently, under the law, if the appeal is successful, the employer is obligated to consider the subsequent test results and restore the Petitioner's eligibility.

The actions of Dr. Platt, including his failure to follow protocols and mishandling of test results, constitute a breach of his duty of care to the Petitioner. As a result, the Petitioner has suffered economic damages, including medical expenses and wage loss, which are recoverable under § 766.202(3) of the Florida Statutes.

The Petitioner was denied the right to be heard, the opportunity to tender evidence in support of his case, and a fair evaluation of the conflicting drug test results. The negligence and malpractice exhibited by Dr. Platt, as well as the bad faith actions of Werner, have caused the Petitioner to suffer significant economic damages. It is imperative that the court recognizes these violations and provides appropriate remedies to ensure justice is served.

The doctor in this case committed medical malpractice and negligence, resulting in significant harm and injury to the patient. Medical malpractice occurs when a healthcare professional deviates from the accepted standard of care, leading to injury or harm to the patient. The doctor's actions in this case clearly demonstrate a breach of their duty of care, and their negligence caused the patient to suffer severe consequences.

In medical malpractice cases, the standard of care is a crucial factor. It refers to the level of skill, knowledge, and care that a reasonably competent healthcare professional in the same field would exercise under similar circumstances. The doctor in this case failed to meet the expected standard of care by misdiagnosing the patient, administering incorrect treatment, and disregarding the patient's legitimate concerns.

Negligence is the failure to exercise reasonable care, resulting in harm or injury to another person. The doctor's negligent actions, such as misidentifying the patient, improperly interpreting test results, and dismissing the patient's complaints without proper investigation, demonstrate a clear deviation from the expected standard of care. This negligence directly contributed to the patient's worsened condition and prolonged suffering.

Causation is a critical element in medical malpractice cases. It establishes the link between the doctor's negligence and the patient's harm. In this case, the doctor's negligent actions directly caused the patient's condition to deteriorate, resulting in additional pain,

suffering, and the need for further medical intervention. The patient's negative outcomes were a direct consequence of the doctor's breach of duty.

The patient suffered substantial damages as a result of the doctor's medical malpractice and negligence. These damages include physical pain, emotional distress, additional medical expenses, loss of income, and a diminished quality of life. The doctor's actions caused the patient unnecessary harm and financial burdens that could have been avoided if the appropriate standard of care had been met.

Florida case law, such as Gooding v. University Hospital Building, Inc., 445 So. 2d 1015 (Fla. 1984), and Saunders v. Dickens, 170 So. 3d 413 (Fla. 2015), supports the position that healthcare professionals have a duty to provide competent and reasonable care to their patients. When they breach this duty through negligence or medical malpractice, they may be held accountable for the resulting harm and damages.

Based on the doctor's clear deviation from the standard of care, their negligence, the direct causal link between their actions and the patient's harm, and the resulting damages suffered by the patient, it is evident that the doctor should be held liable for medical malpractice. The patient deserves fair compensation for the physical, emotional, and financial losses they have endured due to the doctor's actions.

# F. CONCLUSION

The Petitioner respectfully request that the decision of the Board be quashed and that this case be remanded to the district court with directions that the case proceed as a direct appeal. All appropriate relief is respectfully requested.

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was mailed/hand delivered to:

1. The Florida Medical Board

On this _____ day of _____ 2023.

Respectfully submitted,

/s/_____

BOBBY R. WILLIAMS

Pro se

14

**Annexure A – Copy of Complaint sent to the Florida Medical Board**

If the incident involved criminal conduct, contact local law enforcement. Have you contacted local law enforcement?

☐Yes    ☐No

If Yes, Name of Contact: _____ Date: _____ Case Number: _____

Agency Name:_____

### Provide a complete description of the complaint/report.
### Include facts, details, dates, locations, etc. (who, what, when and where)
Attach additional sheets if necessary.

**Please make and attach copies of medical records, correspondence, contracts and any other documents that will help support your complaint. Failure to attach records will delay the investigation.**

Date of Incident: 8/12/2020

I was hired by Werner Enterprises whom Dr. George Edward Platt MD contractors with as a medical review officer. I was a given a pre-hire offer for employment while in Roadmaster Driving School where they Required me to take 2 drug hair follicle tests; 05/04/2020 and 06/22/2020. On day one of employment (8/10/2020) I was given another hair follicle drug test that Dr. Platt certified as the MRO. On 8/12/2020 I was called into the office at Werner Enterprises by Bill Ramirez who advised that Dr. Platt wanted to speak with me by phone. Another trainer named Allen was also in the office to witness the conversation. When I got on the phone the first thing Dr. Platt said was, "Is this Roy Williams". I said, "No, this is Bobby Williams". The doctor then said, "Ok, wrong person". I looked at Bill and Alan and said to them, "The doctor asked me if this is Roy Williams". Dr. Platt returned to the call and said, "Ok I have your hair follicle test and it is positive for meth". I was completely shocked and dumbfounded. I have never used an illicit substance in my entire life. I have been driving with a CDL license for over 20 years and I have never failed a drug test. I asked the doctor if we could redo the test because there was obviously an error, and he said "No the decision is final". I asked the doctor how could that be possible when I don't use drugs. He said, "I'm sorry because of that we have to terminate you". When I hung up, I looked at Bill and Alan and said, "This is not possible because I am not a drug user". I immediately setup a hair follicle test for the very next day with Concentra and American Mobile Drug Testing. Hair follicle tests can detect a drug for up to 90 days. I have 2 tests on the front end of this positive test and 2 tests on the back end that are all negative. Dr. Platt certified the results to the 2 tests that were taken on the front end of the positive test. I have recently come into my record from Werner Enterprises to see the lab results, and I discovered there were 2 tests from the one-time collection that were sent out to two separate labs on 8/10/2020; Omega and Quest Labs. Omega lab reported a positive test for meth, while Quest lab reported a negative test. Upon doing further research, I discovered that I have a right to an appeal of the positive drug test with an independent lab as according to the department of transportation. If that is the case, when the doctor discovered there being 2 conflicting results for the same sample, there should have been a discussion about my right to appeal, he should asked me if I was taking other medications or the types of supplements, or suggested a test to rule out a false positive. My rights were denied. Dr. Platt took an oath to do no harm and he did the exact opposite. This caused me to be unemployed and homeless. I am speaking up because I fear that there are others who have endured the same. I am attaching the recorded notes about the conversation with Dr. Platt. Please notice there was no mention of due process; the right to appeal, test for false positive, or other types of meds taken.

The complaint form must be signed and returned to the Department.

Signature: Bobby Williams                                    Date: 3/3/2022
(Required to file complaint)

| You may scan and return the form via email to: | You may mail the form to: | You may fax the form to: |
|---|---|---|
| MQA.consumerservices@flhealth.gov | Consumer Services Unit<br>4052 Bald Cypress Way, Bin C-75<br>Tallahassee, FL 32399-3275 | 850-488-0796 |



# AUTHORIZATION FOR RELEASE OF PATIENT INFORMATION

To: Any and All Treating Health Care Practitioners or Facilities:
This authorization meets the requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA Privacy Law) found at 45 CFR, Part 164.

This document authorizes any and all licensed health care practitioners, including but not limited to: physicians, nurses, therapists, social workers, counselors, dentists, chiropractors, podiatrists, optometrists, hospitals, clinics, laboratories, medical attendants and other persons who have participated in providing any health care or service to me, to discuss any communication, whether confidential or privileged, and to provide full and complete patient reports and records justifying the course of treatment including but not limited to: patient histories, x-rays, examination and test results, HIV, mental health, drug abuse treatment, psychiatric and psychological records, reports or information prepared by other persons that may be in your possession and all financial records, to the Department of Health (or any official representative of the Department) pursuant to Section 456.057, Florida Statutes. This document provides full authorization to the Department of Health (or any official representative of the Department) to use any of the aforementioned reports and information for reproduction, investigation or other use for licensure or disciplinary actions and civil, criminal or administrative proceedings, as needed by the Department and may be subject to re-disclosure by the recipient and may no longer be protected by the federal privacy laws and regulation.
By signing below, the patient understands, acknowledges and authorizes the Department to release their identity and medical records to law enforcement and other regulatory agencies in appropriate circumstances at the Department's discretion.

**A photocopy of this document is as sufficient as the original.**

I understand that this authorization may be revoked upon my written request except to the extent that action has already been taken on this authorization.

Patient Name (Print): Bobby R Williams _____ Signature: _Bobby Williams_

D.O.B.: 03/09/1956 _____ SSN: 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 _____ Date: 3/3/2022 _____

Name of Authorized Person Other than Patient (Print): _____

Signature of Authorized Person Other than Patient: _____

Witness Name (Print): Ocean Anombem _____ Witness Signature: _Ocean Anombem_

DOH USE ONLY
Reference Number

_____



# Health Care Provider Complaint Form

This information MUST be completed to investigate your complaint, as we correspond via U.S. mail. Incomplete forms CANNOT be processed.

Florida Statutes 456.073, Disciplinary proceeding: (1) The department, for the boards under its jurisdiction, shall cause to be investigated any complaint that is filed before it if the complaint is in writing, signed by the complainant, and legally sufficient. *If an investigation of any subject is undertaken, the Department will furnish to the subject or the subject's attorney a copy of the complaint or document that resulted in the initiation of the investigation.*

## Health Care Provider Information:

Name: Platt _____ George _____ E _____ MD _____ 1700881158 _____
    Last           First          M.I.      Profession      License Number

Address: 705 Ferries Street _____ Green Cove Springs, _____ FL _____ 32043 _____
    Number & Street            City          State      Zip

Phone number(s): 904-284-4510 _____ Website: _____

## Complainant Information:

Agency/Company Name (if applicable): _____

Your Name: Williams _____ Bobby _____ Ray _____
    Last            First          M.I.

Address: 940 W Round Grove Rd Apt 1136 _____ Lewisville _____ TX _____ 75067 _____
    Number & Street            City          State      Zip

Phone Number: 682-667-3179 _____ Email: BWIL21615@GMAIL.COM _____

## Patient Information:

*Please complete this section if you are filing a complaint on behalf of the patient. If you are the patient, please leave this section blank.*

Name: _____
    Last            First          M.I.

Address: _____
    Number & Street            City          State      Zip

Phone Number: _____ Date of Birth: _____

Your relationship to the patient:

☑ Self    ☐ Parent    ☐ Son/Daughter    ☐ Spouse    ☐ Brother/Sister    ☐ Legal Guardian    ☐ Other: _____

*Please provide documentation indicating your appointment as the legal authority/guardianship or personal representative.*

## The Department does not investigate complaints regarding the amount charged for a procedure, broken or missed appointments, customer service, bedside manner, rudeness, professionalism or personality conflicts.

**Annexure B – Copy of the Decision of the Florida Medical Board**

**Mission:**
To protect, promote & improve the health
of all people in Florida through integrated
state, county & community efforts.



**Ron DeSantis**
Governor

**Joseph A. Ladapo, MD, PhD**
State Surgeon General

**Vision:** To be the Healthiest State in the Nation

---

April 14, 2023

**PERSONAL AND CONFIDENTIAL**

Bobby R. Williams
2928 Johannan Lane,
North Las Vegas, FL 89032

Re:    DOH vs. George E. Platt, MD
       DOH Case Number: 2021-20186

Dear Mr. Williams:

Please be advised that the complaint which you filed in the matter referenced above was recently presented to the Probable Cause Panel for the Board of Medicine. After careful consideration of all information and evidence obtained in this case, the Panel determined that probable cause of a violation did not exist and directed that this case be closed.

Pursuant to section 456.073(9)(c), Florida Statutes, you may submit in writing, within sixty (60) days of the date of this letter, any **additional** information which may be relevant to the decision, to the Department at Prosecution Services Unit, 4052 Bald Cypress Way, BIN C65, Tallahassee, Florida 32399-3265.

Because this case was dismissed without the finding of probable cause, the investigative file remains confidential and exempt from the Florida Sunshine Law, detailed in chapter 119, and pursuant to section 456.073(10), Florida Statutes.

Sincerely,

/s/ Michael J. Williams
Michael J. Williams
Assistant General Counsel

MJW/js

---

**Florida Department of Health**
Office of the General Counsel – Prosecution Services Unit
4052 Bald Cypress Way, Bin C-65 • Tallahassee, FL 32399-3265
EXPRESS MAIL: 2585 Merchants Row, Suite 105
PHONE: 850/245-4640 • FAX: 850/245-4662
**FloridaHealth.gov**



Accredited Health Department
Public Health Accreditation Board

STATE OF FLORIDA

SUPREME COURT OF FLORIDA

LEON, FLORIDA

BOBBY R. WILLIAMS,

    Petitioner,

vs.

FLORIDA MEDICAL BOARD,

    Respondent.

_____/

**PETITIONER BOBBY R. WILLIAMS**

**MEMORANDUM OF LAW**

**IN SUPPORT OF HIS**

**APPLICATION FOR WRIT OF CERTIORARI AND MANDAMUS**

COMES NOW the Petitioner, Bobby R. Williams pro se files this Memorandum of Law to discuss the legal authority that exists to support its Application for Writ of Certiorari and Mandamus, and states:

**A. BACKGROUND AND FACTS**

The Petitioner in this case seeks judicial review of the decision made by the Florida Medical Board (the board) to dismiss his complaint against Dr. George E. Platt for medical malpractice. The complaint was initially filed with the Board on February 2, 2022. The Petitioner now seeks orders of certiorari and mandamus from the court, invoking its original jurisdiction under Fla. R. App. P. 9.190. The Petitioner requests the court to issue writs of certiorari and mandamus directing the Board to hold Dr. Platt liable for medical malpractice and to overturn the dismissal of the complaint.

The Petitioner timely filed the complaint with the Board on February 2, 2022. However, the Board did not provide a determination based on the complaint until April 14, 2023, more than a year after the complaint was filed. This lengthy delay puts the Petitioner at a significant disadvantage, as it may impede his ability to bring a proper case before a court due to the Statute of Limitations. In Florida, there is a two-year limitation period to bring an action against a medical practitioner for medical malpractice under Fla. R. P. 95.11(4)(b).

1

The circumstances leading to the complaint involve the Petitioner's employment with Werner Enterprises Inc., where he underwent a driving evaluation and drug test as part of the pre-employment requirements. Dr. George E. Platt was contracted by Werner Enterprises to conduct the drug tests at his clinic, identified as Omega and Quest Labs. The Petitioner complied with the requirement and underwent two drug hair follicle tests at Dr. Platt's clinic.

On the Petitioner's first day of employment, he was called into the office and informed that Dr. Platt wanted to speak with him. During the telephone conversation, Dr. Platt mistakenly identified the Petitioner as Roy Williams, which the Petitioner corrected. Dr. Platt then proceeded to disclose the drug test results, indicating a positive result for methamphetamine, which shocked the Petitioner. The Petitioner, who had never used illicit substances and had a clean record as a CDL-licensed driver for over 20 years, requested that the test be redone, suspecting an error. However, Dr. Platt denied the request, insisting that the test results were final.

In response to the Petitioner's insistence that the results were incorrect, Dr. Platt abruptly stated, "I am sorry because of that we have to terminate you." The Petitioner informed other individuals present during the conversation that the test results were wrong and that he was not a drug user. The Petitioner, determined to prove his innocence, promptly scheduled a hair follicle drug test with Concentra and American Mobile Drug Testing, both of which yielded negative results.

Further investigation revealed that two tests were conducted on the same sample, sent to separate laboratories (Omega and Quest Labs) on August 10, 2020. Omega Lab reported a positive result for methamphetamine, while Quest Lab reported a negative result. The Petitioner discovered his right to appeal a positive drug test with an independent lab according to the Department of Transportation regulations.

The actions of Dr. Platt, disregarding the conflicting results and failing to discuss the Petitioner's right to appeal or consider other factors that could explain a false positive, ultimately led to the Petitioner losing his job, which served as his primary source of livelihood during the challenging circumstances of the COVID-19 pandemic. As a result, the Petitioner suffered significant financial losses, mental anguish, and emotional distress.

Subsequently, the Petitioner filed a complaint with the Florida Medical Board on February 2, 2022. The complaint was presented to the Probable Cause Panel for the Board of Medicine, which concluded that there was no probable cause for a violation and dismissed the complaint.

2

Although the Petitioner had the option to appeal within 60 days of receiving the board's order, as outlined in section 456.073(9)(c) of the Florida Statutes, he seeks the court's intervention due to the board's insufficient process, which has resulted in delays and hindered the resolution of the matter.

The Petitioner's case highlights the unjust dismissal of his complaint by the Florida Medical Board and the subsequent hardships he faced as a result of Dr. Platt's actions. The Petitioner seeks redress through the court, invoking the right to be heard and emphasizing the importance of a fair and just legal process in accordance with constitutional provisions safeguarding these rights.

## B. DISCUSSION OF LAW

The Petitioner's case involves several key legal principles and constitutional rights that are fundamental to the administration of justice. This discussion will focus on three main areas of the law: the right to be heard, the duty of the Florida Medical Board, and the availability of judicial review.

The United States Constitution, through its Fifth and Sixth Amendments, and the Florida Constitution, specifically Article I, Sections 9 and 16, provide robust protections for the right to be heard. The Fifth Amendment's Due Process Clause ensures that individuals have a fair opportunity to present their case and be heard before any deprivation of life, liberty, or property occurs. Similarly, the Sixth Amendment guarantees a fair trial and includes rights such as confronting witnesses, obtaining witnesses in one's favor, and the assistance of counsel. In the Florida Constitution, Article I, Section 9, reinforces the right to due process, emphasizing that no person should be deprived of their rights without proper legal proceedings. Furthermore, Article I, Section 16, underscores the right to a speedy and public trial, explicitly stating that courts must be open to every person for redress of any injury, without sale, denial, or delay. Together, these constitutional provisions affirm the right to be heard and emphasize the fundamental importance of a fair and just legal process.

The Petitioner's right to be heard was violated by the Florida Medical Board. The Board made a decision to dismiss the Petitioner's complaint without affording him the opportunity to present his evidence, cross-examine witnesses, and make submissions in support of his case. This denial of the right to be heard runs contrary to the constitutional protections mentioned above and undermines the principles of justice and fairness.

3

The Florida Medical Board is entrusted with the responsibility of regulating medical practitioners and ensuring public safety in the field of healthcare. As a quasi-judicial body, the Board is expected to exercise its powers in a fair, unbiased, and diligent manner. The Board is obligated to thoroughly investigate complaints and allegations of medical malpractice and make informed decisions based on the evidence presented. It is also required to provide a reasonable opportunity for the parties involved to be heard and to consider all relevant factors before reaching a conclusion.

In the present case, the Board failed in its duty to adequately consider the Petitioner's complaint and the evidence supporting it. The dismissal of the complaint without a proper review and without granting the Petitioner the opportunity to present his case constitutes a breach of the Board's obligations. This undermines public trust in the Board's ability to fulfill its regulatory function and raises concerns about the fairness and impartiality of its decision-making process.

Judicial review is a vital mechanism that allows courts to review the decisions of administrative bodies and ensure that they are lawful, reasonable, and procedurally fair. The purpose of judicial review is to provide a check and balance over the exercise of administrative power, safeguard individual rights, and promote accountability.

In the present case, the Petitioner seeks judicial review of the Board's decision to dismiss his complaint. This is a legitimate recourse available to him, as the Board's decision may have been arbitrary, unsupported by evidence, or reached without proper procedural safeguards. Through the writs of certiorari and mandamus, the Petitioner requests the court to quash the Board's decision and compel the Board to hold Dr. Platt liable for medical malpractice and negligence.

By invoking judicial review, the Petitioner seeks the court's intervention to rectify the injustices suffered, protect his rights, and hold the Board accountable for its actions. Judicial review plays a crucial role in ensuring that administrative bodies act within their legal authority and in accordance with principles of fairness and due process.

The discussion of the law highlights the significance of the right to be heard, the duty of the Florida Medical Board, and the availability of judicial review in the context of the Petitioner's case. These legal principles emphasize the importance of a fair and just legal process, the need for proper investigation and consideration of evidence, and the role of the court in safeguarding individual rights and promoting accountability.

## C. <u>CONCLUSION</u>

The Petitioner's case against the Florida Medical Board raises serious concerns regarding the denial of the right to be heard, the failure of the Board to fulfill its duty to thoroughly investigate complaints, and the need for judicial review to rectify these injustices. The Petitioner's fundamental right to present evidence and make submissions in support of his case was violated, undermining the principles of fairness and due process.

Furthermore, the Board's dismissal of the complaint without proper review and consideration of evidence raises questions about the Board's impartiality and adherence to its regulatory responsibilities. The Petitioner's livelihood was affected due to the negligence of Dr. Platt, which could have been addressed if the Board had conducted a thorough and fair assessment of the case.

The availability of judicial review provides an essential avenue for the Petitioner to seek redress and hold the Board accountable for its actions. Through the writs of certiorari and mandamus, the Petitioner seeks to challenge the Board's decision and compel the Board to find Dr. Platt liable for medical malpractice and negligence. This is necessary to rectify the injustice suffered by the Petitioner and restore faith in the regulatory process.

In light of the violations of the right to be heard, the failure of the Board to fulfill its duty, and the importance of judicial review in upholding the principles of justice, it is imperative for the court to intervene in this matter. By granting the requested writs, the court can ensure that the Petitioner's rights are protected, that the Board's decision is thoroughly reviewed, and that appropriate action is taken to address the negligence and misconduct of Dr. Platt.

Ultimately, the resolution of this case will not only impact the Petitioner's life and livelihood but also have broader implications for the fair and just administration of the medical profession in Florida.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion was mailed/hand delivered to:

1. The Florida Medical Board

On this _____ day of _____ 2023.

Respectfully submitted,

/s/_____

BOBBY R. WILLIAMS

Pro se

6

# IN THE

# SUPREME COURT OF FLORIDA

BOBBY R. WILLIAMS,

     Petitioner,

v.                                          Case No.

FLORIDA MEDICAL BOARD,

     Defendant.

**RECORD OF APPEAL**

BOBBY R. WILLIAMS, Pro se

P.O. Box 2928 Johannan Lane
North Las Vegas, NV 89032
+1 (682) 667-3179
Bwil21615@gmail.com

1

| NO. | DOCUMENT | PAGES |
|-----|----------|-------|
| 1. | Complaint to the Florida Medical Board dated 2 February 2022 | 3-6 |
| 2. | Decision of the Florida Medical Board dated 16 April 2023 | 7 |
| 3. | Appeal to Decision of the Complaint dated | 8-13 |
| 4. | Laboratory Tests dated 25 February 2022 | 14-18 |
| 5. | Laboratory Tests dated 20 August 2020 | 19 |
| 6. | Laboratory Tests dated 27 August 2020 | 20-21 |
| 7. | Laboratory Tests dated 16 September 2021 | 22-26 |
| 8. | Laboratory Tests dated 25 February 2022 | 27-28 |
| 9. | Laboratory Tests dated 20 August 2020 | 29-33 |

2

If the incident involved criminal conduct, contact local law enforcement. Have you contacted local law enforcement?

☐ Yes    ☐ No

If Yes, Name of Contact: _____ Date: _____ Case Number: _____

Agency Name: _____

### Provide a complete description of the complaint/report.
### Include facts, details, dates, locations, etc. (who, what, when and where)
**Attach additional sheets if necessary.**

**Please make and attach copies of medical records, correspondence, contracts and any other documents
that will help support your complaint. Failure to attach records will delay the investigation.**

Date of Incident: 8/12/2020

I was hired by Werner Enterprises whom Dr. George Edward Platt MD contractors with as a medical review officer. I was a given a pre-hire offer for employment while in Roadmaster Driving School where they Required me to take 2 drug hair follicle tests; 05/04/2020 and 06/22/2020. On day one of employment (8/10/2020) I was given another hair follicle drug test that Dr. Platt certified as the MRO. on 8/12/2020 I was called into the office at Werner Enterprises by Bill Ramirez who advised that Dr. Platt wanted to speak with me by phone. Another trainer named Allen was also in the office to witness the conversation. When I got on the phone the first thing Dr. Platt said was, "Is this Roy Williams". I said, "No, this is Bobby Williams". The doctor then said, "Ok, wrong person". I looked at Bill and Alan and said to them, "The doctor asked me if this is Roy Williams". Dr. Platt returned to the call and said, "Ok I have your hair follicle test and it is positive for meth". I was completely shocked and dumbfounded. I have never used an illicit substance in my entire life. I have been driving with a CDL license for over 20 years and I have never failed a drug test. I asked the doctor if we could redo the test because there was obviously an error, and he said "No the decision is final". I asked the doctor how could that be possible when I don't use drugs. He said, "I'm sorry because of that we have to terminate you". When I hung up, I looked at Bill and Alan and said, "This is not possible because I am not a drug user". I immediately setup a hair follicle test for the very next day with Concentra and American Mobile Drug Testing. Hair follicle tests can detect a drug for up to 90 days. I have 2 tests on the front end of this positive test and 2 tests on the back end that are all negative. Dr. Platt certified the results to the 2 tests that were taken on the front end of the positive test. I have recently come into my record from Werner Enterprises to see the lab results, and I discovered there were 2 tests from the one-time collection that were sent out to two separate labs on 8/10/2020; Omega and Quest Labs. Omega lab reported a positive test for meth, while Quest lab reported a negative test. Upon doing further research, I discovered that I have a right to an appeal of the positive drug test with an independent lab as according to the department of transportation. If that is the case, when the doctor discovered there being 2 conflicting results for the same sample, there should have been a discussion about my right to appeal, he should asked me if I was taking other medications or the types of supplements, or suggested a test to rule out a false positive. My rights were denied. Dr. Platt took an oath to do no harm and he did the exact opposite. This caused me to be unemployed and homeless. I am speaking up because I fear that there are others who have endured the same. I am attaching the recorded notes about the conversation with Dr. Platt. Please notice there was no mention of due process; the right to appeal, test for false positive, or other types of meds taken.

**The complaint form must be signed and returned to the Department.**

Signature: *Bobby Williams*                                    Date: 3/3/2022
(Required to file complaint)

| You may scan and return the form via email to: | You may mail the form to: | You may fax the form to: |
|---|---|---|
| MQA.consumerservices@flhealth.gov | Consumer Services Unit 4052 Bald Cypress Way, Bin C-75 Tallahassee, FL 32399-3275 | 850-488-0796 |

3



**Florida HEALTH**
Medical Quality
Assurance

# AUTHORIZATION FOR RELEASE OF PATIENT INFORMATION

To: Any and All Treating Health Care Practitioners or Facilities:
This authorization meets the requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA Privacy Law) found at 45 CFR, Part 164.

This document authorizes any and all licensed health care practitioners, including but not limited to: physicians, nurses, therapists, social workers, counselors, dentists, chiropractors, podiatrists, optometrists, hospitals, clinics, laboratories, medical attendants and other persons who have participated in providing any health care or service to me, to discuss any communication, whether confidential or privileged, and to provide full and complete patient reports and records justifying the course of treatment including but not limited to: patient histories, x-rays, examination and test results, HIV, mental health, drug abuse treatment, psychiatric and psychological records, reports or information prepared by other persons that may be in your possession and all financial records, to the Department of Health (or any official representative of the Department) pursuant to Section 456.057, Florida Statutes. This document provides full authorization to the Department of Health (or any official representative of the Department) to use any of the aforementioned reports and information for reproduction, investigation or other use for licensure or disciplinary actions and civil, criminal or administrative proceedings, as needed by the Department and may be subject to re-disclosure by the recipient and may no longer be protected by the federal privacy laws and regulation.
By signing below, the patient understands, acknowledges and authorizes the Department to release their identity and medical records to law enforcement and other regulatory agencies in appropriate circumstances at the Department's discretion.

**A photocopy of this document is as sufficient as the original.**

I understand that this authorization may be revoked upon my written request except to the extent that action has already been taken on this authorization.

Patient Name (Print): Bobby R Williams _____ Signature: *Bobby Williams*

D.O.B.: 03/09/1956 _____ SSN: 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 _____ Date: 3/3/2022 _____

Name of Authorized Person Other than Patient (Print): _____

Signature of Authorized Person Other than Patient: _____

Witness Name (Print): Ocean Anombem _____ Witness Signature: *Ocean Anombem*

DOH USE ONLY
Reference Number

_____



**Florida HEALTH**
Medical Quality Assurance

# Health Care Provider Complaint Form
This information MUST be completed to investigate your complaint, as we correspond via U.S. mail. Incomplete forms CANNOT be processed.

Florida Statutes 456.073, Disciplinary proceeding: (1) The department, for the boards under its jurisdiction, shall cause to be investigated any complaint that is filed before it if the complaint is in writing, signed by the complainant, and legally sufficient. *If an investigation of any subject is undertaken, the Department will furnish to the subject or the subject's attorney a copy of the complaint or document that resulted in the initiation of the investigation.*

## Health Care Provider Information:

Name: Platt _____ George _____ E _____ MD _____ 1700881158 _____
      Last               First            M.I.     Profession     License Number

Address: 705 Ferries Street _____ Green Cove Springs, _____ FL _____ 32043 _____
        Number & Street              City              State     Zip

Phone number(s): 904-284-4510 _____ Website: _____

## Complainant Information:

Agency/Company Name (if applicable): _____

Your Name: Williams _____ Bobby _____ Ray _____
         Last               First              M.I.

Address: 940 W Round Grove Rd Apt 1136 _____ Lewisville _____ TX _____ 75067 _____
        Number & Street            City              State     Zip

Phone Number: 682-667-3179 _____ Email: BWIL21615@GMAIL.COM _____

## Patient Information:
*Please complete this section if you are filing a complaint on behalf of the patient. If you are the patient, please leave this section blank.*

Name: _____
         Last               First              M.I.

Address: _____
        Number & Street            City              State     Zip

Phone Number: _____ Date of Birth: _____

Your relationship to the patient:

☑Self ☐Parent ☐Son/Daughter ☐Spouse ☐Brother/Sister ☐Legal Guardian ☐Other: _____

*Please provide documentation indicating your appointment as the legal authority/guardianship or personal representative.*

**The Department does not investigate complaints regarding the amount charged for a procedure, broken or missed appointments, customer service, bedside manner, rudeness, professionalism or personality conflicts.**

## COMPLAINT AND INCIDENT REPORT

| DATE RECEIVED | TIME RECEIVED | AM | PM | TRACTOR # | TRAILER # | DISPATCHER |
|---|---|---|---|---|---|---|
| 08/13/20 | 1346 Hours | ☐ | ☒ | I | NA | RECRUITER |
| REPORTED BY | ADDRESS | | | | | TELEPHONE |
| Jim Edsall | OMAHA, NE | | | | | 2484 |
| INCIDENT DATE | INCIDENT TIME | AM | PM | LOCATION | | |
| 08/13/20 | 1346 Hours | ☐ | ☒ | | | |
| DRIVER'S NAME | | | | | EMPLOYEE # | |
| Bobby Williams | | | | | 607227 | |

**DESCRIPTION OF TRAINING COMPLAINT**

08/13/20 1346 Hours Jim Edsall /OMANE: Driver **Bobby Williams** was given a pre-employment hair follicle drug test under Werner Enterprise's Drug and Alcohol Policy. We received notice from Exam VIP that **Bobby Williams** needed to contact the MRO. **Bobby Williams** spoke with the MRO and was advised of a positive Methamphetamine result.

**DRIVER'S REPONSE**

08/13/20 1346 Hours Jim Edsall /OMANE: States he's not knowingly taken "Meth", he does / had taken supplements.

**COMMENTS / DISPOSITION**

08/13/20 1346 Hours Jim Edsall /OMANE: **Bobby Williams** was notified that he has been termination for violation of company policy as it relates to the use of a controlled substance.

**OTHER INFORMATION**

08/13/20 1346 Hours Jim Edsall /OMANE: A SWS was completed with the following verbiage; **Bobby Williams** was terminated as the result of violating Werner Enterprises Company Policy. A note was also entered in the Current Notice Screen indicating the Driver was terminated for violation of company policy and to see the incident report in imaging for further detail.

REPORTED BY : **Jim Edsall** /OMANE          REVIEWED BY: **Jim Edsall** /OMANE

CC: SAFETYHOTLINE, SCOTT HOLLENBECK, DER

6



**Mission:**
To protect, promote & improve the health
of all people in Florida through integrated
state, county & community efforts.

**Florida HEALTH**

**Vision:** To be the Healthiest State in the Nation

**Ron DeSantis**
Governor

**Joseph A. Ladapo, MD, PhD**
State Surgeon General

April 14, 2023

**PERSONAL AND CONFIDENTIAL**

Bobby R. Williams
2928 Johannan Lane,
North Las Vegas, FL 89032

Re:    DOH vs. George E. Platt, MD
        DOH Case Number: 2021-20186

Dear Mr. Williams:

Please be advised that the complaint which you filed in the matter referenced above was recently presented to the Probable Cause Panel for the Board of Medicine. After careful consideration of all information and evidence obtained in this case, the Panel determined that probable cause of a violation did not exist and directed that this case be closed.

Pursuant to section 456.073(9)(c), Florida Statutes, you may submit in writing, within sixty (60) days of the date of this letter, any **additional** information which may be relevant to the decision, to the Department at Prosecution Services Unit, 4052 Bald Cypress Way, BIN C65, Tallahassee, Florida 32399-3265.

Because this case was dismissed without the finding of probable cause, the investigative file remains confidential and exempt from the Florida Sunshine Law, detailed in chapter 119, and pursuant to section 456.073(10), Florida Statutes.

Sincerely,

/s/ Michael J. Williams
Michael J. Williams
Assistant General Counsel

MJW/js

---

**Florida Department of Health**
Office of the General Counsel – Prosecution Services Unit
4052 Bald Cypress Way, Bin C-65 • Tallahassee, FL 32399-3265
EXPRESS MAIL: 2585 Merchants Row, Suite 105
PHONE: 850/245-4640 • FAX: 850/245-4662
**FloridaHealth.gov**



**Accredited Health Department**
Public Health Accreditation Board

7

16 May 2023

Florida Department of Health

4052 Bald Cypress Way, Bin C-65

Tallahassee, FL 32399-3265

EXPRESS MAIL: 2585 Merchants Row, Suite 105

PHONE: 850/245-4640

FAX: 850/245-4662

FloridaHealth.gov


RE: <u>Appeal of Decision Regarding Complaint Ref. DOH vs. George E. Platt, MD DOH Case Number: 2021-20186</u>

Dear Florida Health Department,

I am writing to appeal the decision made by the Florida Health Department regarding the complaint I filed, as outlined in your letter dated 14 April 2023. I believe that the decision to close the case without finding probable cause is inconsistent with the protocol established in the Medical Review Officer (MRO) manual.

I would like to bring to your attention the following key points:

1. **Violation of MRO Protocol**

The blatant violation of the MRO protocol by Dr. George Edward Platt M.D. is a grave concern that cannot be overlooked. According to the MRO manual, it is clearly outlined that when a positive drug test result is obtained, the MRO must follow specific procedures. The violations committed by Dr. Platt directly contradict these established guidelines, thereby raising serious questions about the integrity of the testing process and the reliability of the results.

According to the MRO manual, Rule 4.4 explicitly states that the MRO must inform the donor of the opportunity to request testing of the split specimen (Bottle B) when the primary specimen (Bottle A) is reported as positive, adulterated, or substituted to the federal agency. It further emphasizes that the donor has 72 hours from the time of notification of the non-negative result to request the split specimen test. The MRO is required to document the donor's verbal request in the MRO records.

1

8

In violation of Rule 4.4, Dr. Platt failed to inform me within the specified 72-hour window about the positive test result and my right to request a split specimen test. This failure not only infringes upon my rights but also undermines the integrity of the testing process.

Moreover, the MRO manual provides clear instructions on the necessary steps for requesting the split specimen test. The manual states that the MRO must request testing of the split specimen (Bottle B) in writing, using a memorandum or letter format. The written request should include essential information such as the MRO's name and address (on MRO letterhead), the laboratory name and address where the primary specimen analysis was performed, the specimen ID number on the Federal CCF, the laboratory accession number, and the name and address of the HHS-certified laboratory selected to test the split specimen (Bottle B).

Dr. Platt's failure to follow the proper procedure for requesting the split specimen test, as outlined in the MRO manual, demonstrates a disregard for established guidelines. This negligence further undermines the fairness and accuracy of the testing process.

Additionally, the MRO manual highlights the importance of confidentiality in reporting split specimen test results. It states that the split testing laboratory must report the results to the MRO using a copy of Copy 1 of the Federal CCF, ensuring confidentiality and prohibiting the verbal reporting of results by telephone. This measure is in place to maintain the integrity of the results and prevent any compromise of sensitive information.

Dr. Platt's failure to ensure the proper handling and confidentiality of the split specimen test results is a serious breach of protocol. This violation raises concerns about the accuracy and reliability of the reported results and casts doubt on the entire testing process.

In summary, the violations committed by Dr. George Edward Platt M.D. against the MRO protocol, as clearly outlined in the MRO manual, are undeniable. These violations include the failure to inform the donor within the required timeframe, neglecting the proper procedure for requesting the split specimen test, and disregarding the confidentiality requirements for reporting test results. These breaches of protocol significantly compromise the integrity, fairness, and accuracy of the testing process, warranting a thorough investigation and appropriate actions to address the violations.

### 2. Contradictory Test Results

The contradictory test results obtained from Omega and Quest Labs regarding the same hair follicle sample collected on 8/10/2020 are a matter of great concern. (The test results have been attached hereto). The significance of this discrepancy cannot be ignored, as it raises serious doubts

2

9

about the accuracy and consistency of the testing process employed by these laboratories. The conflicting results demand further investigation to determine the reliability of the tests and to identify any potential errors or inconsistencies that may have influenced the outcomes.

According to Rule 4.4 of the MRO manual, in cases where the primary specimen (Bottle A) is reported as positive, adulterated, or substituted, the MRO is obligated to inform the donor of the opportunity to request testing of the split specimen (Bottle B). This provision ensures an additional level of verification and acts as a safeguard against false positives or other testing errors.

The contradictory test results obtained from Omega and Quest Labs strongly suggest the possibility of testing errors or inconsistencies. As outlined in Rule 4.4, the MRO manual explicitly emphasizes the importance of conducting a split specimen test when the primary specimen is reported as positive. The purpose of this procedure is to verify and confirm the initial result, ensuring accuracy and reliability.

The discrepancy between the positive result from Omega Labs and the negative result from Quest Labs calls into question the reliability of both testing facilities. It is essential to determine whether there were any procedural deviations, technical issues, or other factors that could have influenced the conflicting results.

The contradictory nature of the test results raises doubts about the reliability and consistency of the testing procedures employed by both Omega and Quest Labs. This discrepancy could be indicative of potential errors in sample collection, handling, or analysis, or it could even signal the presence of false positives. These possibilities highlight the necessity for a thorough investigation into the testing methodologies and practices employed by these laboratories.

To ensure the accuracy and fairness of the testing process, it is imperative that the medical board thoroughly examines the contradictory results and initiates a comprehensive investigation. This investigation should include an assessment of the laboratories' adherence to established protocols, the proficiency of the testing personnel, the consistency of equipment calibration, and the possibility of any external factors that could have influenced the results.

The contradictory test results obtained from Omega and Quest Labs demand a comprehensive investigation to ascertain the validity and reliability of the tests. The medical board should consider the possibility of false positives, potential errors in testing procedures, or inconsistencies in the laboratories' practices. This investigation is crucial to maintain the integrity of the testing process and to ensure that individuals are not unjustly accused or penalized based on unreliable or contradictory results.

3

10

The contradictory test results obtained from Omega and Quest Labs regarding the same hair follicle sample collected on 8/10/2020 raise significant concerns about the accuracy and consistency of the testing process. These discrepancies demand a thorough investigation to identify any potential errors, inconsistencies, or false positives that may have occurred. The medical board should prioritize this investigation to uphold the integrity of the testing process and protect individuals from unjust consequences.

### 3. Lack of Mention of Protocol in Small Claims Court Proceedings

The act of perjury committed by the defendant's representative, Benton Lloyd, is a grievous violation that strikes at the core of the legal system's commitment to truth and integrity. Mr. Lloyd's false testimony under oath regarding the split sample test result is a deliberate and calculated distortion of the facts, intended to deceive the court and manipulate the outcome of the case. This blatant disregard for the truth not only taints the credibility of the defendant's arguments but also undermines the integrity of the entire legal process.

When Mr. Benton Lloyd, the defendant's representative, knowingly provided false testimony regarding the split sample test result, he violated the fundamental principle of truthfulness that underpins the legal system. His intentional act of perjury, stating that the result was positive when he was fully aware that it was negative, demonstrates a clear lack of ethical conduct and respect for the judicial process.

The consequences of Mr. Lloyd's perjury extend beyond the immediate impact on the court's ruling. By presenting false information, he manipulated the perception of the case and influenced the decision in favor of the defendant. This deceit not only compromises the fairness of the proceedings but also undermines public trust in the legal system and the pursuit of justice.

Mr. Lloyd's perjury had significant ramifications, as it swayed the court's decision in favor of the defendant. This act of deliberate dishonesty not only distorts the truth but also casts doubt on the fairness and validity of the entire legal process. The medical board must acknowledge the gravity of this misconduct and recognize its far-reaching implications for the integrity and credibility of the proceedings.

The medical board must carefully consider the serious implications of Mr. Lloyd's perjury. By knowingly presenting false information to the court, he not only compromised the accuracy of the proceedings but also displayed a lack of integrity and respect for the rule of law. Such misconduct erodes public confidence in the legal system and raises concerns about the defendant's commitment to truth and accountability.

4

11

The medical board has a responsibility to address the perjury committed by Mr. Lloyd and evaluate its impact on the fairness and validity of the proceedings. This act of dishonesty calls into question the integrity of the defendant and their representative, and raises concerns about their willingness to abide by ethical standards. The medical board should carefully assess the implications of perjury in this case and take appropriate action to uphold the integrity of the legal process.

The act of perjury committed by the defendant's representative, Benton Lloyd, is a grave violation that undermines the truth-seeking nature of the legal system. His deliberate false testimony not only influenced the court's ruling but also compromised the integrity and fairness of the proceedings. The medical board must recognize the serious implications of this perjury and its impact on the credibility of the defendant and their representative. Taking appropriate action is crucial to uphold the principles of justice and maintain public trust in the legal system.

**Prayer**

In light of the numerous violations of the MRO protocol, the contradictory test results, and the act of perjury committed by the defendant's representative, Benton Lloyd, I respectfully request the medical board to take decisive action in addressing these issues and ensuring justice is served.

I urge the medical board to find Dr. George Edward Platt M.D. liable for his violations of the MRO protocol and hold him accountable for his actions. Dr. Platt's failure to adhere to the established protocol and his disregard for the rules and regulations governing the handling of positive drug test results demonstrate a lack of professionalism and a disregard for the well-being of individuals like myself.

Furthermore, I implore the medical board to institute the most just punishment on Dr. Platt in accordance with the law and the severity of his violations. It is crucial that the medical board sends a clear message that such behavior is unacceptable and will not be tolerated within the medical community. By imposing appropriate disciplinary measures, the medical board can help maintain the standards of the profession and protect the integrity of the testing process.

Additionally, I seek redress for the damages I have suffered as a result of Dr. Platt's actions. The violations of the MRO protocol, the contradictory test results, and the perjury committed by the defendant's representative have caused significant emotional distress, reputational harm, and financial burden. It is only fair and just that I be awarded appropriate damages to compensate for these losses and the impact they have had on my life.

In conclusion, I respectfully implore the medical board to find Dr. George Edward Platt M.D. liable for his violations, impose the most just punishment on him in accordance with the law, and

5

12

award me damages to compensate for the damages I have suffered. By taking these actions, the medical board can ensure accountability, maintain the integrity of the profession, and provide me with the justice and resolution I rightfully deserve.

As per the provisions of section 456.073(9)(c), Florida Statutes, I am submitting this appeal within sixty (60) days of receiving the decision letter. I kindly request that you reconsider the dismissal of this case and undertake a comprehensive review, taking into account the violations of the MRO protocol that have been brought to your attention.

Thank you for your attention to this matter. I anticipate a prompt response and a fair assessment of my appeal.

Sincerely,


Bobby R. Williams
2928 Johanna Lane
North Las Vegas, FL 89032
bwil21615@gmail.com
+1 (682) 667-3179

6

13

# COPY OF THE DRUG TEST RESULTS

14



Exam VIP - MRO Letter

2/25/2022



From: George Platt
4840 South Atlantic Ave,
New Smyrna Beach FL 32169

To: Werner Enterprises Dot
14507 Frontier Rd,
Omaha, NE 68138

Collection Site:
02335

## Medical Review Officer Report
### - Confidential -

This is a notification of a controlled substance test result on:

| | | | |
|---|---|---|---|
| Individual Tested: | Williams, Bobby | Primary ID: | 0005218079 NV |
| Reason for Test: | Pre-Employment | Specimen ID: | 3375283 |
| Collection Site: | 02335 | Date of Collection: | 08/10/2020 |
| Laboratory: | Quest | Lab Accession #: | 302675R |
| MRO: | George Platt | MRO Receive Date: | 08/12/2020 |
| Drug Panel: | 07043N | MRO Verification Date: | |
| | | MRO Electronic Results Release Date: | 08/12/2020 |
| | | MRO Copy CCF2: | 08/11/2020 |

Substances included in test profile:

| Substance | Screen | Confirm |
|---|---|---|
| 6-Acetylmorphine | 10 | 10 |
| Amphetamines | 500 | 250 |
| Cocaine Metabolites | 150 | 100 |
| Marijuana Metabolites, | 50 | 15 |
| Mda-Analogues | 500 | 250 |
| Opiates | 2000 | 2000 |
| Opiates | 300 | 100 |
| Oxycodones | 100 | 100 |
| Phencyclidine | 25 | 25 |

Collector Details:
Coll Site Phone:
Collector's Name:     C Martin
Testing Authority:

This controlled substances test was conducted in accordance with 49 CFR Part 40.
The verified result is: Negative
Comments:

George Platt
Phone: 866-238-9172

Released by: Amanda Harrison

https://examvip.com/mro_letter_autoprint15.php?iOrderID=317635



3/25/22, 8:57 AM                                                    Exam VIP - MRO Letter

                                                                                        2/25/2022



From: George Platt
        4640 South Atlantic Avenue
        New Smyrna Beach FL  32169

To: Werner Enterprises - Fontana/SAP
        14507 Frontier Road
        Omaha, NE  68138

Collection Site:
Werner Enterprises - Fontana
10251 Calabash Avenue
Fontana CA  92335
800-255-2194

## Medical Review Officer Report

### - Confidential -

This is a notification of a controlled substance test result on:

| | | | |
|---|---|---|---|
| Individual Tested: | Williams, Bobby | Primary ID: | 0005218079 NV |
| Reason for Test: | Pre Employment | Specimen ID: | 5019108 |
| Collection Site: | Werner Enterprises - Fontana | Date of Collection: | 08/10/2020 |
| Laboratory: | Omega | Lab Accession #: | 03832807 |
| MRO: | George Platt | MRO Receive Date: | 08/28/2020 |
| Drug Panel: | HMRETEST | MRO Verification Date: | |
| | | MRO Electronic Results Release Date: | 09/02/2020 |
| | | MRO Copy CCF2: | 09/02/2020 |

Substances included in test profile:

| Substance | Screen | Confirm |
|---|---|---|

Collector Details:
Coll Site Phone:          800-255-2194
Collector's Name:
Testing Authority:

This controlled substances test was conducted in accordance with 49 CFR Part 40.

The verified result is: Positive
POSITIVE for: Methamphetamine, Methamphetamines

Comments:

_George Platt_
George Platt
Phone: 1-888-235-9112

Released by: Lauren Devgh

https://examvip.com/mro_letter_autoprint5.php?tOrderID=320127

**NON FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM**

**5019108**

OMEGA

E Eff

1007997

13197

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Request's Agency, I.D. No.
Werner Enterprises - Fontana/SAP
14507 Frontier Road
Omaha, NE 48138
800-797-3753
FAX: 1-402-894-3769

B. MRO Name, Address, Phone and Fax No.
Dr. George Platt/ExamVIP
4640 South Atlantic Ave
New Smyrna Beach, FL 32169
866-205-9112
FAX: 1-866-482-6690

C. Donor Name: _____

Donor SSN or Employee I.D. No. 000521807 NV

D. Reason for Test: ☐ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☐ Post Accident
☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Drug Tests to be Performed: ☐ Hair 5 Drug Panel  ☐ Hair 5 Drug Panel + Extended Opiates  ☐ Other (specify) _____

F. Collection Site Address:
Werner Enterprises - Fontana
10251 Calabash Avenue
Fontana, CA 92335
800-255-2194
FAX: 909-823-6091

**STEP 2: COMPLETED BY COLLECTOR**
☐ HEAD HAIR  ☐ BODY _____  REMARKS _____

**STEP 3:** Collector affixes seal to pouch. Donor initials and dates seal. Donor completes STEP 5.
**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**
I certify that the specimen given to me by the donor identified in the certification section in STEP 5 of this form was collected, labeled, sealed and released to RM Delivery Service noted in accordance with applicable requirements.

X _____  _____
   Signature of Collector

_____  _____
   (Print) Collector's Name (First, M, Last)  Date (MM/Day/Yr.)

SPECIMEN RELEASED TO:
COURIER  FedEx
   Name of Delivery Service/Transferring Specimen to Lab

**DO NOT WRITE IN THIS SECTION. FOR LABORATORY USE ONLY.**
RECEIVED AT LAB:
X _____
   Signature of Accessioner

_____  _____
   (Print) Accessioner's Name (First, M, Last)  Date (MM/Day/Yr.)

Specimen Seal Intact
☐ Yes
☐ No. Enter Remark Below

SPECIMEN RELEASED TO:

**STEP 5: COMPLETED BY DONOR**
I certify that I provided my specimen to the collector, that I have not adulterated it in any manner, the specimen used was sealed with a tamper-evident seal in my presence, and that the information provided on this form and on the label affixed to the specimen hair pouch is correct.

X _____
   Signature of Donor

Daytime Phone No. 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  Evening Phone No. _____
   (Print) Donor's Hair (First, M, Last)

Date of Birth _____
   Mo   Day   Yr.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**
In accordance with applicable requirements, my determination/verification is:
☐ NEGATIVE  ☐ POSITIVE  ☐ TEST CANCELLED

REMARKS _____

X _____
   Signature of Medical Review Officer

_____
   (Print) Medical Review Officer's Name (First, M, Last)

_____
   Date (MM/Day/Yr.)

**COPY 4 - REQUESTING AGENCY COPY**

PRESS HARD - YOU ARE MAKING MULTIPLE COPIES



FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM

Quest
Diagnostics

COPY 4 - EMPLOYER COPY

# @screen  Specimen Result Certificate

| | | |
|---|---|---|
| ID Number:   7903378650 | Report printed on     8/20/2020 1:03:40 PM | Page 1 of 1 |

| | |
|---|---|
| Attention:<br>John Burgos<br>Accredited Drug Testing Inc<br>5931 Brick Court, Ste 100<br>Winter Park, FL 32792<br><br>Collection Site:<br>9880 - Concentra Medical Center - Polaris | Verification Date      8/20/2020  11:56 AM<br><br>Medical Review Officer:<br>Dr. Stephen Kracht<br>8140 Ward Parkway Ste 275<br>Kansas City, MO 64114<br>888-382-2281 |

| | |
|---|---|
| Donor Name:     WILLIAMS, BOBBY<br>Date Of Test:    8/14/2020<br>ID Number:       7903378650 | Donor SSN:      XXX-XX-9219<br>Donor ID:<br>Reason for Test: Other |
| Laboratory:      Omega Laboratories | Regulation:      Non-DOT<br>Specimen Type: Hair |

## Drugs Tested:

| Drug Name | Result | Laboratory Screening Cutoff * | Laboratory Confirmation Cutoff * | Drug Name | Result | Laboratory Screening Cutoff * | Laboratory Confirmation Cutoff * |
|---|---|---|---|---|---|---|---|
| Marijuana | Negative | 1 pg/mg | 0.1 pg/mg | Methamphetamines | Negative | 500 pg/mg | 500 pg/mg |
| Cocaine | Negative | 500 pg/mg | 500 pg/mg | Opiates | Negative | 200 pg/mg | 200 pg/mg |
| Amphetamines | Negative | | | PCP | Negative | 300 pg/mg | 300 pg/mg |

## Final Result Disposition: **Negative**

**TO BE COMPLETED BY THE MEDICAL REVIEW OFFICER**

I have reviewed the laboratory results for the specimen identified by this form in accordance with applicable Federal requirements. My determination/verification is:

☑ Negative   ☐ Dilute     ☐ Positive     ☐ Test Cancelled   ☐ Adulterated   ☐ Refusal to test because ☐ Substituted

REMARKS:      1.5 inches (3.81 cm) - Head Hair

| | | |
|---|---|---|
| Dr. Stephen Kracht | *Stephen J. Kracht D.O.* | 8/20/2020  11:56 AM |
| (PRINT) Medical Review Officer's Name | Signature of Medical Review Officer | Date (Mo./Day/Yr.) |

* Represents laboratory screening and confirmation values.

19

# @screen    Specimen Result Certificate

ID Number:   E437370                          Report printed on     8/27/2020 7:24:26 AM          Page 1 of 1

| | |
|---|---|
| Attention: <br> John Burgos <br> Accredited Drug Testing Inc <br> 5931 Brick Court, Ste 100 <br> Winter Park, FL 32792 <br><br> Collection Site: <br> 24535 - American Mobile Drug Testing | Verification Date     8/26/2020  12:11 PM <br><br> Medical Review Officer: <br> Dr. Stephen Kracht <br> 8140 Ward Parkway Ste 275 <br> Kansas City, MO 64114 <br> 888-382-2281 |

| | | |
|---|---|---|
| Donor Name: | WILLIAMS, BOBBY | Donor SSN:      XXX-XX-9219 <br> Donor ID:       NV0005218079 <br> Reason for Test: Other |
| Date Of Test: | 8/21/2020 | |
| ID Number: | E437370 | |
| Laboratory: | Omega Laboratories | Regulation:     Non-DOT <br> Specimen Type: Hair |

## Drugs Tested:

| Drug Name | Result | Laboratory Screening Cutoff * | Laboratory Confirmation Cutoff * | Drug Name | Result | Laboratory Screening Cutoff * | Laboratory Confirmation Cutoff * |
|---|---|---|---|---|---|---|---|
| Marijuana | Negative | 1 pg/mg | 0.1 pg/mg | Methamphetamines | Negative | 500 pg/mg | 500 pg/mg |
| Cocaine | Negative | 500 pg/mg | 500 pg/mg | Opiates | Negative | 200 pg/mg | 200 pg/mg |
| Amphetamines | Negative | | | PCP | Negative | 300 pg/mg | 300 pg/mg |

## Final Result Disposition: **Negative**

**TO BE COMPLETED BY THE MEDICAL REVIEW OFFICER**

I have reviewed the laboratory results for the specimen identified by this form in accordance with applicable Federal requirements. My determination/verification is:

☑ Negative          ☐ Positive          ☐ Test Cancelled          ☐ Refusal to test because
☐ Dilute                                                        ☐ Adulterated        ☐ Substituted

REMARKS:      1.5 inches (3.81 cm) - Head Hair

Dr. Stephen Kracht            *Stephen J. Kracht D.O.*            8/26/2020  12:11 PM

(PRINT) Medical Review Officer's Name    Signature of Medical Review Officer    Date (Mo./Day/Yr.)

* Represents laboratory screening and confirmation values.

20

# FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM

SPECIMEN ID NO.



**2063599116**



CLINICAL REFERENCE LABORATORY
8433 QUIVIRA • LENEXA, KANSAS 66215

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**    ACCESSION NO.

A. Employer Name, Address, I.D. No.    PH 702-380-1712    B. MRO Name, Address, Phone No. and Fax No.
DR GEORGE PLATT
4645 S ATLANTIC AVE
NEW SMYRNA BEACH, FL

C. Donor SSN or Employee I.D. No.  NV0005J18079

D. Specify Testing Authority: ☐ HHS  ☐ NRC    Specify DOT Agency: ☒ FMCSA  ☐ FAA  ☐ FRA  ☐ FTA  ☐ PHMSA  ☐ USCG

E. Reason for Test: ☒ Pre-employment ☐ Random ☐ Reasonable Suspicion/Cause ☒ Post Accident ☐ Return to Duty ☐ Follow-up ☐ Other (specify)

F. Drug Tests to be Performed: ☒ THC, COC, PCP, OPI, AMP  ☐ THC & COC Only  ☐ Other (specify)

G. Collection Site Address:
4060 N. MLK BLVD STE 101
N. Las Vegas, NV 89032

Collector Phone No. 702 380-1712
Collector Fax No. 877 361-1165

**STEP 2: COMPLETED BY COLLECTOR** (make remarks when appropriate) Collector reads specimen temperature within 4 minutes.

Temperature between 90° and 100° F? ☒ Yes ☐ No, Enter Remark | Collection: ☒ Split ☐ Single ☐ None Provided, Enter Remark | ☐ Observed, Enter Remark
REMARKS

**STEP 3:** Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)
**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY TEST FACILITY**

I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed and released to the Delivery Service noted in accordance with applicable Federal requirements.

X _____ Signature of Collector    Date 05 04 20  Time 8:47 AM/PM    SPECIMEN BOTTLE(S) RELEASED TO: FedEx
(PRINT) Collector's Name (First, MI, Last)    Name of Delivery Service

**STEP 5: COMPLETED BY DONOR**

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _____ Signature of Donor    Bobby William (PRINT) Donor's Name    Date 05 04 20

Daytime Phone No. (   )    Evening Phone No. (702) 903-5071    Date of Birth 3-9-1956

After the Medical Review Officer receives the test results for the specimen identified by this form, he/she may contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5). – DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**

In accordance with applicable Federal requirements, my verification is:

☐ NEGATIVE  ☐ POSITIVE for: _____
☐ DILUTE
☐ REFUSAL TO TEST because – check reason(s) below:    ☐ TEST CANCELLED
☐ ADULTERATED (adulterant/reason): _____
☐ SUBSTITUTED
☐ OTHER: _____
REMARKS: _____

X _____ Signature of Medical Review Officer    (PRINT) Medical Review Officer's Name (First, MI, Last)    Date (Mo/Day/Yr)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN**

In accordance with applicable Federal requirements, my verification for the split specimen (if tested) is:

☐ RECONFIRMED for: _____    ☐ TEST CANCELLED
☐ FAILED TO RECONFIRM for: _____
REMARKS: _____

X _____ Signature of Medical Review Officer    (PRINT) Medical Review Officer's Name (First, MI, Last)    Date (Mo/Day/Yr)

9/16/21, 1:42 PM

Exam VIP - MRO Letter

9/16/2021



**Collection Site:**

-

From: George Platt
4640 South Atlantic Avenue
New Smyrna Beach FL  32169

7023801712

To:

,

## Medical Review Officer Report

### - *Confidential* -

*This is a notification of a controlled substance test result on:*

| | | | |
|---|---|---|---|
| **Individual Tested:** | Williams, Bobby | **Primary ID:** | **0005218079 NV** |
| **Reason for Test:** | PRE-EMPLOYMENT | **Specimen ID:** | 2063599116 |
| **Collection Site:** | - | **Date of Collection:** | 05/04/2020 |
| **Laboratory:** | CRL | **Lab Accession #:** | R3449581 |
| **MRO:** | George Platt | **MRO Receive Date:** | 05/06/2020 |
| **Drug Panel:** | | **MRO Verification Date:** | |
| | | **MRO Electronic Results Release Date:** | 05/06/2020 |
| | | **MRO Copy CCF2:** | 05/06/2020 |

### Substances included in test profile:

| Substance | Screen | Confirm |
|---|---|---|
| 6-AM | 10 | 10 |
| AMP/MAMP | 500 | 500 |
| COCAINE METABOLITE | 150 | 150 |
| COD/MOR | 2000 | 2000 |
| HYC/HYM | 300 | 300 |
| MARIJUANA METABOLITES | 50 | 50 |
| MDMA/MDA | 500 | 500 |
| OXYC/OXYM | 100 | 100 |
| PHENCYCLIDINE | 25 | 25 |

**Collector Details:**
Coll Site Phone:      7023801712
Collector's Name:     JEFF RUIZ
Testing Authority:    DOT1

**This controlled substances test was conducted in accordance with 49 CFR Part 40.**

**The verified result is: Negative**
Comments:

George Platt
Phone: 1-866-235-9112

Released by: Felicia Burton

22

SPECIMEN ID NO.



2063999701



CLINICAL REFERENCE LABORATORY
8433 QUIVIRA · LENEXA, KANSAS 66215

EXAM VIP LAB

ACCESSION NO.

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

Employer Name, Address, I.D. No.
ROADMASTER
2380 S 46TH AVE
PHOENIX, AZ 85043

B. MRO Name, Address, Phone No. and Fax No.
DR. GEORGE PLATT
4640 S. ATLANTIC AVE
NEW SMYRNA BEACH, FL 32169
PH: 866-835-9110 FX 866-410-1784

DOO5 018079

Donor SSN or Employee I.D. No.

Specify Testing Authority: ☒ HHS ☐ NRC   Specify DOT Agency: ☒ FMCSA ☐ FAA ☐ FRA ☐ FTA ☐ PHMSA ☐ USCG

Reason for Test: ☒ Pre-employment ☐ Random ☐ Reasonable Suspicion/Cause ☐ Post Accident ☐ Return to Duty ☐ Follow-up ☐ Other (specify)

Drug Tests to be Performed: ☒ THC, COC, PCP, OPI, AMP ☐ THC & COC Only ☐ Other (specify)

Collection Site Address: 6704 W Latham
Phoenix Az 85043

Collector Phone No. 623 226 3404

Collector Fax No. 623 349 1277

**STEP 2: COMPLETED BY COLLECTOR** (make remarks when appropriate) Collector reads specimen temperature within 4 minutes.
Temperature between 90° and 100°F? ☒ Yes ☐ No. Enter Remark   Collection: ☒ Split ☐ Single ☐ None Provided. Enter Remark   ☐ Observed, Enter Remark

REMARKS

**STEP 3:** Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy).
**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY TEST FACILITY**

SPECIMEN BOTTLE(S) RELEASED TO:
Fedex
1395409603644

Signature of Collector: Josh Myr

Date (Mo/Day/Yr) 06 08 2000   Time of Collection 1015 PM

**STEP 5: COMPLETED BY DONOR**
I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

Signature of Donor: Bobby Williams

(PRINT) Donor's Name (First, MI, Last) Bobby Williams   Date 6-23-20

Daytime Phone No. 602 903 5091   Evening Phone No.   Date of Birth 3-9-86

After the Medical Review Officer receives the test results for the specimen identified by this form, he/she may contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5). -- DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**
In accordance with applicable Federal requirements, my verification is:

☐ NEGATIVE   ☐ POSITIVE for:
   ☐ DILUTE
☐ REFUSAL TO TEST because - check reason(s) below:
   ☐ ADULTERATED (adulterant/reason)
   ☐ SUBSTITUTED
   ☐ OTHER:

☐ TEST CANCELLED

REMARKS

X _____
Signature of Medical Review Officer   (PRINT) Medical Review Officer's Name (First, MI, Last)   Date (Mo/Day/Yr)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN**
In accordance with applicable Federal requirements, my verification for the split specimen (if tested) is:

☐ RECONFIRMED for:
☐ FAILED TO RECONFIRM for:

☐ TEST CANCELLED

REMARKS

X _____
Signature of Medical Review Officer   (PRINT) Medical Review Officer's Name (First, MI, Last)   Date (Mo/Day/Yr)

COPY 2 - MEDICAL REVIEW OFFICER COPY   V1.0   3/20

23

# FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM

SPECIMEN ID NO.



CLINICAL REFERENCE LABORATORY
8433 QUIVIRA · LENEXA, KANSAS 66215

## 2063999701

ACCESSION NO.

### STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE

A. Employer Name, Address, I.D. No.    PH: 602-233-1898
ACGT: XV2 DOTI PD840
SCADMASTER
2250 S 46TH AVE
PHOENIX, AZ 85040

B. MRO Name, Address, Phone No. and Fax No.    MRO9700
DR GEORGE PLATT
4840 S ATLANTIC AVE
NEW SMYRNA BEACH, FL 32169

C. Donor SSN or Employee I.D. No. _0005915079_

D. Specify Testing Authority: ☒ HHS ☐ NRC    Specify DOT Agency: ☒ FMCSA ☐ FAA ☐ FRA ☐ FTA ☐ PHMSA ☐ USCG

E. Reason for Test: ☒ Pre-employment ☐ Random ☐ Reasonable Suspicion/Cause ☐ Post Accident ☐ Return to Duty ☐ Follow-up ☐ Other (specify) _____

F. Drug Tests to be Performed:    ☒ THC, COC, PCP, OPI, AMP    ☐ THC & COC Only    ☐ Other (specify) _____

G. Collection Site Address: 4704 W Lothen
Phoenix Az 85043

Collector Phone No. _623 226 3404_
Collector Fax No. _623 399 1277_

### STEP 2: COMPLETED BY COLLECTOR (make remarks when appropriate) Collector reads specimen temperature within 4 minutes.

| Temperature between 90° and 100° F? | ☒ Yes | ☐ No, Enter Remark | Collection: | ☒ Split | ☐ Single | ☐ None Provided, Enter Remark | ☐ Observed, Enter Remark |

REMARKS

### STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)

### STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY TEST FACILITY

I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed and released to the Delivery Service noted in accordance with applicable Federal requirements.

X _____
Signature of Collector

_____ (PRINT) Collector's Name (First, MI, Last)

Date (Mo/Day/Yr) _01/03_    Time of Collection _1015_ ☐ AM ☒ PM

SPECIMEN BOTTLE(S) RELEASED TO:
Fedex
13954096 1364
Name of Delivery Service

### STEP 5: COMPLETED BY DONOR

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _____
Signature of Donor

_____ (PRINT) Donor's Name (First, MI, Last)

_____ Date (Mo/Day/Yr)

Daytime Phone No. _____    Evening Phone No. _____    Date of Birth _3/16/__ (Mo/Day/Yr)

After the Medical Review Officer receives the test results for the specimen identified by this form, he/she may contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5). – DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

### STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN

In accordance with applicable Federal requirements, my verification is:

☐ NEGATIVE    ☐ POSITIVE for: _____
☐ DILUTE

☐ REFUSAL TO TEST because -- check reason(s) below:
☐ ADULTERATED (adulterant/reason): _____
☐ SUBSTITUTED
☐ OTHER: _____

☐ TEST CANCELLED

REMARKS: _____

_____
Signature of Medical Review Officer

_____ (PRINT) Medical Review Officer's Name (First, MI, Last)

_____ Date (Mo/Day/Yr)

### STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN

In accordance with applicable Federal requirements, my verification for the split specimen (if tested) is:

RECONFIRMED for: _____

☐ FAILED TO RECONFIRM for: _____

☐ TEST CANCELLED

REMARKS: _____

_____
Signature of Medical Review Officer

_____ (PRINT) Medical Review Officer's Name (First, MI, Last)

_____ Date (Mo/Day/Yr)

COPY 4 – EMPLOYER COPY

V1.0

24

OMB No. 0930-0158

9/16/21, 1:35 PM                                          Exam VIP - MRO Letter



9/16/2021

From: George Platt
      4640 South Atlantic Avenue
      New Smyrna Beach FL  32169

To:

Collection Site:

-

6232263404

## Medical Review Officer Report

### - *Confidential* -

*This is a notification of a controlled substance test result on:*

| | | | |
|---|---|---|---|
| **Individual Tested:** | Williams, Bobby | **Primary ID:** | **0005218079** |
| **Reason for Test:** | PRE-EMPLOYMENT | **Specimen ID:** | 2063999701 |
| **Collection Site:** | - | **Date of Collection:** | 06/22/2020 |
| **Laboratory:** | CRL | **Lab Accession #:** | R3601613 |
| **MRO:** | George Platt | **MRO Receive Date:** | 06/24/2020 |
| **Drug Panel:** | | **MRO Verification Date:** | |
| | | **MRO Electronic Results Release Date:** | 06/24/2020 |
| | | **MRO Copy CCF2:** | 06/24/2020 |

## Substances included in test profile:

| Substance | Screen | Confirm |
|---|---|---|
| 6-AM | 10 | 10 |
| AMP/MAMP | 500 | 500 |
| COCAINE METABOLITE | 150 | 150 |
| COD/MOR | 2000 | 2000 |
| HYC/HYM | 300 | 300 |
| MARIJUANA METABOLITES | 50 | 50 |
| MDMA/MDA | 500 | 500 |
| OXYC/OXYM | 100 | 100 |
| PHENCYCLIDINE | 25 | 25 |

**Collector Details:**

| | |
|---|---|
| Coll Site Phone: | 6232263404 |
| Collector's Name: | JOSH MOEN |
| Testing Authority: | DOT1 |

**This controlled substances test was conducted in accordance with 49 CFR Part 40.**

**The verified result is: Negative**
Comments:

George Platt
Phone: 1-866-235-9112

Released by: Amanda Harrison

# FEDERAL DRUG TESTING CUSTODY AND CONTROL FORM

EE#
607207

**Quest** Diagnostics

80323979
3375283

SPECIMEN ID NO.

80323979
3375283

800-877-7484
www.questdiagnostics.com/mydrugtest

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

LAB ACCESSION NO.

A. Employer Name, Address, I.D. No.
WERNER ENTERPRISES DOT

14507 FRONTIER RD
OMAHA NE 68138
PH 800-789-3763          FAX: 402-895-3769

B. MRO Name, Address, Phone No. and Fax No.
GEORGE E PLATT MD MRO
EXAM VIP
4540 SOUTH ATLANTIC AVE
NEW SMYRNA BEACH FL 32169
PH: 866-230-9122          FAX: 965-480-0690

C. Donor SSN or Employee I.D. No. 000521867 9 NV

D. Specify Testing Authority: ☐ HHS   ☐ NRC   Specify DOT Agency: ☑ FMCSA   ☐ FAA   ☐ FRA   ☐ FTA   ☐ PHMSA   ☐ USCG

E. Reason for Test: ☑ Pre-employment ☐ Random ☐ Reasonable Suspicion/Cause ☐ Post Accident ☐ Return to Duty ☐ Follow-up ☐ Other (specify)

F. Drug Tests to be Performed: ☑ THC, COC, PCP, OPI, AMP   ☐ THC & COC Only   ☐ Other (specify)

G. Collection Site Name: WERNER ENTERPRISES FONTANA
Address: 10251 CALABASH AVE
City, State and Zip: FONTANA          CA 72335
Collection Site Code:
Collector Phone No.: 909-823-4975
Collector Fax No.: 909-823-6093

**STEP 2: COMPLETED BY COLLECTOR (make remarks when appropriate) Collector reads specimen temperature within 4 minutes.**

Temperature between 90° and 100° F? ☑ Yes ☐ No, Enter Remark   Collection: ☐ Split ☐ Single ☐ None Provided, Enter Remark   ☐ Observed, (Enter Remark)

REMARKS

**STEP 3: Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)**

**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY TEST FACILITY**

I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed, and released to the Delivery Service noted in accordance with applicable Federal requirements.

X _____

C. Martin
(Print) Collector's Name (First, MI, Last)

Signature of Collector

8 10 2020    8:20 AM/PM
Date (Mo./Day/Yr.)   Time of Collection

SPECIMEN BOTTLE(S) RELEASED TO:
☐ Quest Diagnostics Courier
☐ FedEx
☑ Other    Fedex

Name of Delivery Service

**STEP 5: COMPLETED BY DONOR**

I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _____
Signature of Donor

Daytime Phone No. 702 202 7971          Evening Phone No. ( )

Bobby Williams
(PRINT) Donor's Name (First, MI, Last)

SOMC

8 10 2020
Date (Mo./Day/Yr.)

3 9 56
Date of Birth    Mo Day Yr.

After the Medical Review Officer receives the test results for the specimen identified by this form, he/she may contact you to ask about prescriptions and over-the-counter medications you may have taken. Therefore, you may want to make a list of those medications for your own records. THIS LIST IS NOT NECESSARY. If you choose to make a list, do so either on a separate piece of paper or on the back of your copy (Copy 5). → DO NOT PROVIDE THIS INFORMATION ON THE BACK OF ANY OTHER COPY OF THE FORM. TAKE COPY 5 WITH YOU.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER – PRIMARY SPECIMEN**

In accordance with applicable Federal requirements, my verification is:

☐ NEGATIVE   ☐ POSITIVE for: _____
   ☐ DILUTE
☐ REFUSAL TO TEST because – check reason(s) below:
   ☐ ADULTERATED (adulterant/reason): _____
   ☐ SUBSTITUTED
   ☐ OTHER _____

☐ TEST CANCELLED

REMARKS: _____

X _____
Signature of Medical Review Officer

_____ (PRINT) Medical Review Officer's Name (First, MI, Last)

_ / _ / _
Date (Mo./Day/Yr.)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER – SPLIT SPECIMEN**

In accordance with applicable Federal requirements, my verification for split specimen (if tested) is:

☐ RECONFIRMED for: _____
   ☐ FAILED TO RECONFIRM for: _____

☐ TEST CANCELLED

REMARKS: _____

X _____
Signature of Medical Review Officer

_____ (PRINT) Medical Review Officer's Name (First, MI, Last)

_ / _ / _
Date (Mo./Day/Yr.)

COPY 2 - MEDICAL REVIEW OFFICER COPY

26



2/25/2022

From: George Platt
4640 South Atlantic Ave,
New Smyrna Beach FL 32169

To: Werner Enterprises Dot
14507 Frontier Rd,
Omaha, NE 68138

**Collection Site:**
92335

## Medical Review Officer Report

### - Confidential -

*This is a notification of a controlled substance test result on:*

| | | | | |
|---|---|---|---|---|
| **Individual Tested:** | Williams, Bobby | **Primary ID:** | | **0005218079 NV** |
| **Reason for Test:** | Pre- Employment | **Specimen ID:** | | 3375283 |
| **Collection Site:** | 92335 | **Date of Collection:** | | 08/10/2020 |
| **Laboratory:** | Quest | **Lab Accession #:** | | 302675R |
| **MRO:** | George Platt | **MRO Receive Date:** | | 08/12/2020 |
| **Drug Panel:** | 67643N | **MRO Verification Date:** | | |
| | | **MRO Electronic Results Release Date:** | | 08/12/2020 |
| | | **MRO Copy CCF2:** | | 08/11/2020 |

## Substances included in test profile:

| Substance | Screen | Confirm |
|---|---|---|
| 6- Acetylmorphine | 10 | 10 |
| Amphetamines | 500 | 250 |
| Cocaine Metabolites | 150 | 100 |
| Marijuana Metabolites, | 50 | 15 |
| Mda- Analogues | 500 | 250 |
| Opiates | 2000 | 2000 |
| Opiates | 300 | 100 |
| Oxycodones | 100 | 100 |
| Phencyclidine | 25 | 25 |

**Collector Details:**
Coll Site Phone:
Collector's Name:      C Martin
Testing Authority:

**This controlled substances test was conducted in accordance with 49 CFR Part 40.**
**The verified result is: Negative**
Comments:

Released by: Amanda Harrison

_____
George Platt
Phone: 866-235-9112

**NON-REGULATED DRUG TESTING CUSTODY AND CONTROL FORM**

## 5019108

EEt-
607997
13197

OMEGA

(330) 628-8748
(800) 865-6669
FAX (330) 628-5909

**STEP 1: COMPLETED BY COLLECTOR OR EMPLOYER REPRESENTATIVE**

A. Requesting Agency, I.D. No.

Werner Enterprises - Fontana/SAP
14507 Frontier Road
Omaha, NE 68138
800-789-9755
FAX: 1-402-894-3769

B. MRO Name, Address, Phone and Fax No.

Dr. George Pletri/ExecUP
4640 South Atlantic Ave
New Smyrna Beach, FL 32169
986-235-9112
FAX: 1-866-480-5578

C. Donor Name: Williams Bobby
(Last, First, Middle)

Donor SSN or Employee I.D. No. 600521807NV

D. Reason for Test:  ☑ Pre-employment  ☐ Random  ☐ Reasonable Suspicion/Cause  ☑ Post Accident
☐ Return to Duty  ☐ Follow-up  ☐ Other (specify) _____

E. Drug Tests to be Performed:  ☐ Hair 5 Drug Panel  ☑ Hair 5 Drug Panel + Extended Opiates  ☐ Other (specify) _____

F. Collection Site Address:
Werner Enterprises - Fontana
10251 Calabash Avenue
Fontana, CA 92335
800-255-2194
FAX: 909-829-8071

**STEP 2: COMPLETED BY COLLECTOR**

☑ HEAD HAIR  ☐ BODY _____ | REMARKS

STEP 3: Collector affixes seal to pouch. Donor initials and dates seal. Donor completes STEP 5.

**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**

I certify that the specimen given to me by the donor identified in the certification section in STEP 5 of this form was collected, labeled, sealed and released to the Delivery Service noted in accordance with applicable requirements.

X _____ Signature of Collector

P. Martin
(PRINT) Collector's Name (First, MI, Last)

Time of Collection: 5:10

Date (Mo./Day/Yr.) 5/10/2020

SPECIMEN RELEASED TO:
COURIER  Fedex
Name of Delivery Service transferring Specimen to Lab

DO NOT WRITE IN THIS SECTION. FOR LABORATORY USE ONLY.

RECEIVED AT LAB:
X _____ Signature of Accessioner

_____ (PRINT) Accessioner's Name (First, MI, Last)   Date (Mo./Day/Yr.)

Specimen Seal Intact
☐ Yes
☐ No. Enter Remark Below

SPECIMEN RELEASED TO:

**STEP 5: COMPLETED BY DONOR**

I certify that I provided my specimen to the collector, that I have not adulterated it in any manner; the specimen used was sealed with a tamper-evident seal in my presence and that the information provided on this form and on the label affixed to the Specimen Hair Pouch is correct.

X _____ Signature of Donor

Daytime Phone No. 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   Evening Phone No. (___) ___ same

Bobby Williams
(PRINT) Donor Name (First, MI, Last)

Date (Mo./Day/Yr.) 5/10/2020

Date of Birth: 3-19-56
Mo. Day Yr.

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**

In accordance with applicable requirements, my determination/verification is:
☐ NEGATIVE  ☐ POSITIVE  ☐ TEST CANCELLED

REMARKS _____ BW

X _____ Signature of Medical Review Officer

_____ (PRINT) Medical Review Officer's Name (First, MI, Last)   Date (Mo./Day/Yr.)

COPY 4 - REQUESTING AGENCY COPY

PRESS HARD - YOU ARE MAKING MULTIPLE COPIES

28



8/20/2020

From: George Platt
4640 South Atlantic Avenue
New Smyrna Beach FL  32169

To: Werner Enterprises - Fontana/SAP
14507 Frontier Road
Omaha, NE  68138

**Collection Site:**
Werner Enterprises - Fontana
10251 Calabash Avenue
Fontana, CA  92335
800-255-2194

## Medical Review Officer Report

### - Confidential -

*This is a notification of a controlled substance test result on:*

| | | | |
|---|---|---|---|
| **Individual Tested:** | Williams, Bobby | **Primary ID:** | **0005218079 NV** |
| **Reason for Test:** | Pre Employment | **Specimen ID:** | 5019108 |
| **Collection Site:** | Werner Enterprises - Fontana | **Date of Collection:** | 08/10/2020 |
| **Laboratory:** | Omega | **Lab Accession #:** | 03820091 |
| **MRO:** | George Platt | **MRO Receive Date:** | 08/13/2020 |
| **Drug Panel:** | H5PEO | **MRO Verification Date:** | 08/13/2020 |
| | | **MRO Electronic Results Release Date:** | 08/13/2020 |
| | | **MRO Copy CCF2:** | 08/13/2020 |

### Substances Included in test profile:

| Substance | Screen | Confirm |
|---|---|---|
| Amphetamine | 500 pg/mg | 500 pg/mg |
| Cocaine/Metabolites | 500 pg/mg | 500 pg/mg |
| Extended Opiates | 200 pg/mg | 200 pg/mg |
| Methamphetamines | 500 pg/mg | 500 pg/mg |
| Opiates | 200 pg/mg | 200 pg/mg |
| Phencyclidine | 300 pg/mg | 300 pg/mg |
| THC Metabolite | 1.00 pg/mg | 0.10 pg/mg |

**Collector Details:**
Coll Site Phone:          800-255-2194
Collector's Name:
Testing Authority:

**This controlled substances test was conducted in accordance with 49 CFR Part 40.**

**The verified result is: Positive**
**POSITIVE for Methamphetamine, Methamphetamine, Methamphetamines**

Comments:

Released by: Amanda Harrison

George Platt
Phone: 1-866-235-9112

https://www.examvip.com/report_monthly_by_company.php



2/25/2022

**From:** George Platt
4640 South Atlantic Avenue
New Smyrna Beach FL  32169

**To:** Werner Enterprises - Fontana/SAP
14507 Frontier Road
Omaha, NE  68138

**Collection Site:**
Werner Enterprises - Fontana
10251 Calabash Avenue
Fontana CA  92335
800-255-2194

# Medical Review Officer Report

## - *Confidential* -

*This is a notification of a controlled substance test result on:*

| | | | |
|---|---|---|---|
| **Individual Tested:** | Williams, Bobby | **Primary ID:** | **0005218079 NV** |
| **Reason for Test:** | Pre Employment | **Specimen ID:** | 5019108 |
| **Collection Site:** | Werner Enterprises - Fontana | **Date of Collection:** | 08/10/2020 |
| **Laboratory:** | Omega | **Lab Accession #:** | 03832807 |
| **MRO:** | George Platt | **MRO Receive Date:** | 08/28/2020 |
| **Drug Panel:** | HMRETEST | **MRO Verification Date:** | |
| | | **MRO Electronic Results Release Date:** | 09/02/2020 |
| | | **MRO Copy CCF2:** | 09/02/2020 |

**Substances included in test profile:**

| Substance | Screen | Confirm |
|---|---|---|

**Collector Details:**
Coll Site Phone:                     800-255-2194
Collector's Name:
Testing Authority:

**This controlled substances test was conducted in accordance with 49 CFR Part 40.**

**The verified result is: Positive**
**POSITIVE for: Methamphetamine, Methamphetamines**

**Comments:**

_George Platt (signature)_
_____
George Platt
Phone: 1-866-235-9112

Released by: Lauren Devgh

Exam VIP - MRO Letter



2/25/2022

From: George Platt
        4640 South Atlantic Avenue
        New Smyrna Beach FL  32169

To: Werner Enterprises - Fontana/SAP
      14507 Frontier Road
      Omaha, NE  68138

**Collection Site:**
Werner Enterprises - Fontana
10251 Calabash Avenue
Fontana CA  92335
800-255-2194

## Medical Review Officer Report

### - *Confidential* -

*This is a notification of a controlled substance test result on:*

| | | | |
|---|---|---|---|
| **Individual Tested:** | Williams, Bobby | **Primary ID:** | 0005218079 NV |
| **Reason for Test:** | Pre Employment | **Specimen ID:** | 5019108 |
| **Collection Site:** | Werner Enterprises - Fontana | **Date of Collection:** | 08/10/2020 |
| **Laboratory:** | Omega | **Lab Accession #:** | 03832807 |
| **MRO:** | George Platt | **MRO Receive Date:** | 08/28/2020 |
| **Drug Panel:** | HMRETEST | **MRO Verification Date:** | |
| | | **MRO Electronic Results Release Date:** | 09/02/2020 |
| | | **MRO Copy CCF2:** | 09/02/2020 |

**Substances included in test profile:**

| Substance | Screen | Confirm |
|---|---|---|

**Collector Details:**
Coll Site Phone:          800-255-2194
Collector's Name:
Testing Authority:

**This controlled substances test was conducted in accordance with 49 CFR Part 40.**

**The verified result is: Positive**
**POSITIVE for: Methamphetamine, Methamphetamines**

Comments:

George Platt
Phone: 1-866-235-9112

Released by: Lauren Devgh

31

# @screen  Specimen Result Certificate

ID Number:  7903378650                    Report printed on      8/20/2020 1:03:40 PM          Page 1 of 1

| | |
|---|---|
| Attention:<br>John Burgos<br>Accredited Drug Testing Inc<br>5931 Brick Court, Ste 100<br>Winter Park, FL 32792<br><br>Collection Site:<br>9880 – Concentra Medical Center - Polaris | Verification Date        8/20/2020  11:56 AM<br><br>Medical Review Officer:<br>Dr. Stephen Kracht<br>8140 Ward Parkway Ste 275<br>Kansas City, MO 64114<br>888-382-2281 |

| | | | |
|---|---|---|---|
| Donor Name: | WILLIAMS, BOBBY | Donor SSN: | XXX-XX-9219 |
| Date Of Test: | 8/14/2020 | Donor ID: | |
| ID Number: | 7903378650 | Reason for Test: Other | |
| | | | |
| | | Regulation: | Non-DOT |
| Laboratory: | Omega Laboratories | Specimen Type: Hair | |

## Drugs Tested:

| Drug Name | Result | Laboratory Screening Cutoff * | Laboratory Confirmation Cutoff * | Drug Name | Result | Laboratory Screening Cutoff * | Laboratory Confirmation Cutoff * |
|---|---|---|---|---|---|---|---|
| Marijuana | Negative | 1 pg/mg | 0.1 pg/mg | Methamphetamines | Negative | 500 pg/mg | 500 pg/mg |
| Cocaine | Negative | 500 pg/mg | 500 pg/mg | Opiates | Negative | 200 pg/mg | 200 pg/mg |
| Amphetamines | Negative | | | PCP | Negative | 300 pg/mg | 300 pg/mg |

### Final Result Disposition: **Negative**

**TO BE COMPLETED BY THE MEDICAL REVIEW OFFICER**

I have reviewed the laboratory results for the specimen identified by this form in accordance with applicable Federal requirements. My determination/verification is:

[✓] Negative          [ ] Positive          [ ] Test Cancelled          [ ] Refusal to test because
    [ ] Dilute                                              [ ] Adulterated    [ ] Substituted

REMARKS:       1.5 inches (3.81 cm) - Head Hair

Dr. Stephen Kracht                    *Stephen J. Kracht D.O.*              8/20/2020  11:56 AM

(PRINT) Medical Review Officer's Name    Signature of Medical Review Officer    Date (Mo./Day/Yr.)

* Represents laboratory screening and confirmation values.

32

# @screen. Specimen Result Certificate

| ID Number: E437370 | Report printed on | 8/27/2020 7:24:26 AM | Page 1 of 1 |
| --- | --- | --- | --- |

| Attention: | Verification Date | 8/26/2020 12:11 PM |
| --- | --- | --- |
| John Burgos | | |
| Accredited Drug Testing Inc | Medical Review Officer: | |
| 5931 Brick Court, Ste 100 | Dr. Stephen Kracht | |
| Winter Park, FL 32792 | 8140 Ward Parkway Ste 275 | |
| | Kansas City, MO 64114 | |
| Collection Site: | 888-382-2281 | |
| 24535 - American Mobile Drug Testing | | |

| Donor Name: | WILLIAMS, BOBBY | Donor SSN: | XXX-XX-9219 |
| --- | --- | --- | --- |
| Date Of Test: | 8/21/2020 | Donor ID: | NV0005218079 |
| ID Number: | E437370 | Reason for Test: | Other |
| | | Regulation: | Non-DOT |
| Laboratory: | Omega Laboratories | Specimen Type: | Hair |

## Drugs Tested:

| Drug Name | Result | Laboratory Screening Cutoff * | Laboratory Confirmation Cutoff * | Drug Name | Result | Laboratory Screening Cutoff * | Laboratory Confirmation Cutoff * |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Marijuana | Negative | 1 pg/mg | 0.1 pg/mg | Methamphetamines | Negative | 500 pg/mg | 500 pg/mg |
| Cocaine | Negative | 500 pg/mg | 500 pg/mg | Opiates | Negative | 200 pg/mg | 200 pg/mg |
| Amphetamines | Negative | | | PCP | Negative | 300 pg/mg | 300 pg/mg |

## Final Result Disposition: **Negative**

**TO BE COMPLETED BY THE MEDICAL REVIEW OFFICER**

I have reviewed the laboratory results for the specimen identified by this form in accordance with applicable Federal requirements. My determination/verification is:

[✓] Negative
   [ ] Dilute

[ ] Positive

[ ] Test Cancelled
   [ ] Adulterated

[ ] Refusal to test because
   [ ] Substituted

REMARKS:   1.5 inches (3.81 cm) - Head Hair

| Dr. Stephen Kracht | *Stephen J. Kracht D.O.* | 8/26/2020 12:11 PM |
| --- | --- | --- |
| (PRINT) Medical Review Officer's Name | Signature of Medical Review Officer | Date (Mo./Day/Yr.) |

\* Represents laboratory screening and confirmation values.

33